(264 P.3d 1018)
No. 103,786

STATE OF KANSAS, *Appellee*, v. LYNDOL JOHNSON, *Appellant*.

Opinion filed September 2, 2011.

*Carol Longenecker-Schmidt*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and MCANANY, JJ.

MALONE, J.: Lyndol Johnson appeals his convictions of felony possession of marijuana and misdemeanor possession of drug paraphernalia. Johnson claims: (1) The district court erred in denying his motion to suppress evidence because law enforcement officers extended a traffic stop without reasonable suspicion and arrested Johnson without probable cause; (2) the district court erred in denying his motion to suppress evidence obtained as a result of a *Miranda* violation; (3) the district court violated Johnson's constitutional right to a jury trial; and (4) the district court violated Johnson's right to be present at all stages of his criminal proceeding.

We disagree with Johnson that the district court erred in failing to suppress the evidence, but we agree that Johnson did not effectively waive his right to a jury trial, and for this reason the case is remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2008, at approximately 12:34 pm, Detective Lee Campbell stopped a vehicle as it was leaving a parking lot when she saw a small child sitting on the driver's lap. The driver was identified as Johnson. Also present in the vehicle were Johnson's wife, Lynette; two other small children; and two other adults. Officer Jessica Kelly was also present at the car stop.

Johnson informed the law enforcement officers that his driver's license was suspended. Also, Johnson could not provide proof of insurance. While talking to Johnson, Campbell detected an odor of alcohol on his breath. Consequently, she asked Kelly to conduct field sobriety testing. Johnson passed the field sobriety tests.

After Kelly confirmed that Johnson was driving on a suspended license, he was arrested and placed in handcuffs. Before conducting a pat-down search, Kelly asked Johnson if he had any weapons, sharp objects, or anything else on his person she should know about. He responded he had marijuana in his pants pocket, and Kelly then removed a bag of marijuana from Johnson's pocket. Upon further search, Kelly found drug paraphernalia pipes and another container of marijuana. Johnson was booked into jail on possession of marijuana, possession of drug paraphernalia, driving with a suspended license, no proof of insurance, and failure to use a child safety restraint. Johnson was searched again by the police when he was booked into jail.

On February 8, 2008, the State filed a complaint/information charging Johnson with one count of felony possession of marijuana and one count of misdemeanor possession of drug paraphernalia. Johnson filed a motion to suppress the evidence. The motion argued that Johnson was arrested without probable cause and his statements were obtained as a result of a *Miranda* violation. After conducting a hearing, the district court denied the motion to suppress. The district court found that under the totality of the cir-

cumstances Johnson was lawfully placed under arrest. The district court also found that Johnson was not subjected to a custodial interrogation when Kelly asked him whether he had anything on his person that she should know about, and that the marijuana and paraphernalia were nevertheless subject to inevitable discovery.

On August 21, 2009, the district court held a status conference, and the parties submitted a stipulation of facts to the district court. Johnson was voluntarily absent from this hearing. Both counsel suggested that the district court review the stipulation of facts and then schedule the matter for a hearing, with the defendant present, so the court could announce its decision on the record. The district court subsequently considered the stipulation of facts and found Johnson guilty of possession of marijuana and possession of drug paraphernalia. Johnson was not present when the district court rendered its findings of guilt.

On December 4, 2009, the district court sentenced Johnson to a controlling term of 20 months' imprisonment and placed Johnson on probation for 18 months, conditioned on mandatory drug treatment. Johnson timely appealed his convictions. Additional facts will be included to address the issues.

## PROBABLE CAUSE TO ARREST

Johnson first claims the district court erred in failing to suppress evidence because law enforcement officers extended the traffic stop without reasonable suspicion and arrested Johnson without probable cause. An appellate court reviews the district court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, the district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence. Then the ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

Johnson concedes that Campbell's initial stop for safety reasons—the observation of a small child on the driver's lap—was permissible. However, on appeal Johnson argues that the law enforcement officers had no reasonable suspicion he was committing a crime so as to justify a continuation of the stop because driving

with a suspended license in a parking lot is not a crime. See *State v. Patton*, 26 Kan. App. 2d 591, 594, 992 P.2d 819 (1999) (appellant was not in violation of K.S.A. 1998 Supp. 8-262, driving on a highway with a suspended license, since he was driving a vehicle on a private parking lot and not a highway). Consequently, Johnson contends his detention should have ended after he passed the field sobriety tests, and the officers lacked probable cause to arrest him because driving with a suspended license in a parking lot is not a crime.

We note initially that Johnson's motion to suppress did not argue that his arrest for driving with a suspended license was illegal because he was driving on a private parking lot. Johnson also failed to raise this argument at the suppression hearing. Johnson is essentially asserting grounds for relief on appeal that were never asserted in district court. Nevertheless, we conclude from the evidence presented at the suppression hearing that the traffic stop was lawfully extended and Johnson was legally arrested. The validity of the initial traffic stop is uncontested. As the State correctly notes, once Johnson's vehicle was lawfully stopped, Campbell's detection of the odor of alcohol on Johnson's breath provided sufficient grounds to extend the scope and duration of the stop. See *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 367, 102 P.3d 490 (2004) (after initial stop for public safety, odor of alcohol was grounds to detain defendant for further investigation).

Although Johnson's arrest for driving with a suspended license may have been invalid, Johnson ignores the fact that he was also arrested for operating a vehicle without proof of liability insurance. K.S.A. 2007 Supp. 40-3104(d) states that "[a]ny person operating a motor vehicle upon a highway *or upon property open to use by the public* shall display, upon demand, evidence of financial security to a law enforcement officer." (Emphasis added.) Here, Johnson was operating his vehicle on property open to use by the public, and he was unable to display proof of liability insurance upon demand by a law enforcement officer. The arrest report included in the record on appeal specifically indicates that Johnson was arrested and booked into jail, in part, for having no proof of insurance. A violation of K.S.A. 2007 Supp. 40-3104(d) is a class B mis-

demeanor and subjects a person to possible arrest. See *State v. Cox*, 41 Kan. App. 2d 833, 834, 206 P.3d 54 (2009) (an officer is authorized to either issue a citation or arrest an individual who fails to provide proof of motor vehicle liability insurance).

Thus, we conclude Johnson was lawfully arrested for operating a vehicle without proof of liability insurance. Accordingly, the district court did not err in denying the motion to suppress evidence on the ground that Johnson was illegally arrested. If a district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *State v. Murray*, 285 Kan. 503, 533, 174 P.3d 407 (2008).

## CUSTODIAL INTERROGATION

Next, Johnson argues the district court should have suppressed any statements and evidence obtained after he was subjected to a custodial interrogation without the benefit of *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966). Johnson contends that Kelly's questions before conducting a pat-down search constituted a custodial interrogation that was not narrowly tailored to ensure officer safety. The State contends Kelly's questions were designed to ensure officer safety and did not amount to an interrogation. The State also asserts the evidence would have been inevitably discovered during a search incident to arrest and during the routine inventory search conducted at the jail.

After placing Johnson under arrest and immediately before conducting a pat-down, Kelly asked Johnson "if he had any weapons, sharp objects, or anything that would stick me there." Kelly also admitted that she asked Johnson if "he had anything on his person that she should know about." Kelly testified that she posed the questions to Johnson because she did not "want somebody getting in [her] car with weapons, knives, needles, or illegal drugs." Johnson responded that he had marijuana in his pants pocket, and Kelly removed a bag of marijuana from Johnson's pocket. Upon further search, Kelly found drug paraphernalia pipes and another container of marijuana. The district court ruled that Kelly's questioning

did not amount to a custodial interrogation and *Miranda* warnings were unnecessary.

"[W]hen reviewing a district judge's suppression decision on an accused's statements, the factual underpinnings of the decision are reviewed for substantial competent evidence, but the ultimate legal decision drawn from those facts is reviewed de novo. *State v. Mattox*, 280 Kan. 473, 480, 124 P.3d 6 (2005); *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003). We do not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Swanigan*, 279 Kan. 18, 23, 106 P.3d 39 (2005)." *State v. Cosby*, 285 Kan. 230, 240, 169 P.3d 1128 (2007).

The Fifth Amendment to the United States Constitution prevents any person from being compelled to be a witness against himself or herself in a criminal case. Section 10 of the Kansas Constitution Bill of Rights recognizes the same guarantee. *State v. Ninci*, 262 Kan. 21, 34, 936 P.2d 1364 (1997). The United States Supreme Court, in *Miranda*, 384 U.S. at 444, extended this privilege when it held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) Thus, officers must inform an individual accused of a crime before questioning that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444.

There are two prerequisites to the applicability of *Miranda*: custody and interrogation. A person is in custody for *Miranda* purposes when the person is formally taken into custody or deprived of his or her freedom of action in a significant way. *State v. Bordeaux*, 38 Kan. App. 2d 757, Syl. ¶ 2, 172 P.3d 78 (2007). A person is interrogated for *Miranda* purposes when law enforcement officers use words or actions that they should reasonably know are likely to elicit an incriminating response. 38 Kan. App. 2d 757, Syl. ¶ 4.

A narrow public safety exception exists to the rule that *Miranda* warnings must be given prior to custodial interrogation. In *New York v. Quarles*, 467 U.S. 649, 657-59, 104 S. Ct. 2626, 81 L. Ed.

2d 550 (1984), the United States Supreme Court held a law enforcement officer may question a suspect before giving *Miranda* warnings when it is objectively reasonable for the officer to believe the questioning is necessary to protect the officer or the public from immediate danger. Kansas courts have recognized the public safety exception expressed in *Quarles*. See *State v. Cosby*, 285 Kan. 230, 241, 169 P.3d 1128 (2007) (discussing public safety exception and application in case law).

Here, after placing Johnson under arrest and immediately before conducting a pat-down search, Kelly asked Johnson "if he had any weapons, sharp objects, or anything that would stick me there." Kelly also asked Johnson if "he had anything on his person that she should know about." Kelly did not inform Johnson of his *Miranda* rights prior to the questioning. There is no dispute that Johnson was in custody for purposes of *Miranda* when Kelly posed the questions. However, the State contends Kelly's questions were designed to ensure officer safety and did not amount to an interrogation.

Although Kansas courts recognize the narrow public safety exception expressed in *Quarles*, our courts have not considered the exception in connection with an officer's pre-*Miranda* questioning regarding potentially harmful objects prior to a pat-down search. Other jurisdictions have done so. See, *e.g. U.S. v. Lackey*, 334 F.3d 1224, 1226 (10th Cir. 2003) (officer's pre-*Miranda* question about the presence of guns or sharp objects on the defendant's person was proper under the public safety exception in *Quarles*); *United States v. Webster*, 162 F.3d 308, 332 (5th Cir. 1998) (asking the defendant whether he had any needles in his pockets that could injure them during their pat-down was for protection of officers and did not constitute interrogation under *Miranda* and *Quarles*).

We conclude that Kelly's question prior to the pat-down search whether Johnson had any weapons, sharp objects, or anything that would stick the officer fits within the narrow public safety exception as set out in *Quarles*. An officer has an immediate need to protect himself or herself from weapons or sharp objects, and the officer may pose this question to a suspect prior to giving *Miranda* warnings.

However, Johnson makes a valid argument that Kelly's question whether "he had anything on his person that she should know about" went beyond the scope of officer safety, and Kelly had reason to know the question was likely to elicit an incriminating response. Johnson cites *State v. Strozier*, 172 Ohio App. 3d 780, 876 N.E.2d 1304 (2007), to support his argument. In *Strozier*, officers stopped a vehicle after running the plates and receiving information the vehicle had been reported stolen. Everyone was ordered out of the vehicle, including the defendant. The defendant was handcuffed and then asked before the pat-down if he had " 'anything on [him] I need to know about? Anything that might stick me?' " 172 Ohio App. 3d at 785. The defendant responded he had a bag with some brown stuff in his pocket. The officer retrieved the bag and, based on his experience, believed the brown substance was heroin.

On appeal, the Ohio court ruled Strozier was in custody and the officer's open-ended question was likely to elicit an incriminating response, thus constituting an interrogation for *Miranda* purposes. Although agreeing the officer's desire to avoid being stuck with needles during the pat-down was a legitimate safety concern, the court stated: "In order to invoke the public-safety exception to *Miranda* under these circumstances, the officer's question must be narrowly tailored to address *only* that concern." 172 Ohio App. 3d at 791. The court suppressed physical evidence obtained as a result of the defendant's statements made while in custody and before *Miranda* warnings. 172 Ohio App. 3d at 791.

A Washington court reached a similar conclusion in *State v. Spotted Elk*, 109 Wash. App. 253, 34 P.3d 906 (2001). In that case, the defendant was arrested on outstanding warrants. Before searching the defendant and without giving *Miranda* warnings, the officer asked, " 'Do you have anything on your person I need to be concerned about?' " 109 Wash. App. at 256. In response, the defendant removed a plastic container from her pocket and explained it contained a friend's heroin. The district court found the officer's question fell within the public safety exception to *Miranda*. The Washington Court of Appeals found the officer's broad and unqualified question was not related solely to his safety, and

there was no sense of urgency surrounding the arrest because nothing in the record indicated the defendant was an apparent threat to the officers or the public. The Washington court concluded the defendant's testimonial act of removing the heroin from her pocket and her verbal statement regarding the heroin should be suppressed. 109 Wash. App. at 260-61.

We are persuaded by the Ohio and Washington decisions. Here, Johnson was unquestionably under arrest and in custody when Kelly asked whether "he had anything on his person that she should know about." The question was not narrowly tailored to fit the public safety exception, and Kelly should have known her question was reasonably likely to elicit an incriminating response. Indeed, Kelly's question elicited an incriminating response, as Johnson admitted he had marijuana in his pocket. We conclude that *Miranda* warnings were required under the circumstances.

Although evidence was seized from Johnson as a result of a custodial interrogation in violation of *Miranda,* the State argues in the alternative that the evidence would have been inevitably discovered. Under the inevitable discovery doctrine, evidence subject to suppression because it was obtained illegally may, nevertheless, be admissible if it would have been obtained legally in any event. *Nix v. Williams,* 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). Kansas courts apply the inevitable discovery doctrine. "The test under the inevitable discovery rule is that, if the prosecution establishes by a preponderance of the evidence that the unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible." *State v. Ingram,* 279 Kan. 745, 750, 113 P.3d 228 (2005).

The State argues the marijuana in Johnson's pocket would have been inevitably discovered during the pat-down search. Generally, a pat-down maneuver only allows an officer to pat down a person's outer clothing to discover firearms or other dangerous weapons. *State v. White,* 44 Kan. App. 2d 960, 970-71, 241 P.3d 591 (2010). But as the State points out, Johnson was already under arrest and Kelly was authorized to do more than pat down his outer clothing to discover weapons. Kelly was authorized to conduct a search incident to Johnson's arrest, which permitted her to place her hands

inside any pockets and under the outer surface of any garments. See K.S.A. 22-2501; *United States v. Robinson*, 414 U.S. 218, 233-35, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). Perhaps more importantly, Kelly testified that Johnson was searched again by the police when he was booked into jail. And Johnson was going to be booked into jail on other charges even before Kelly discovered the drugs in his possession. We agree the prosecution has established by a preponderance of the evidence that the evidence seized from Johnson inevitably would have been discovered by law enforcement.

In summary, Johnson's statements and the evidence discovered as a result of his statements were the product of a custodial interrogation without the benefit of *Miranda* warnings. Nevertheless, the prosecution has established by a preponderance of the evidence that the marijuana and drug paraphernalia inevitably would have been discovered. Accordingly, we conclude the district court did not err in denying the motion to suppress evidence based on the *Miranda* violation.

## WAIVER OF JURY TRIAL

Next, Johnson argues there is no evidence in the record establishing that the district court advised him of his right to a jury trial, which is required to effectuate a valid waiver. Johnson did not raise this argument in district court. However, we will address this issue for the first time on appeal to prevent a denial of fundamental rights. See, *e.g. State v. Duncan*, 44 Kan. App. 2d 1029, 1037, 242 P.3d 1271 (2010); *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009).

The issue of whether a jury trial has been knowingly and voluntarily waived must be based on the facts and circumstances of each case. *State v. Clemons*, 273 Kan. 328, 340, 45 P.3d 384 (2002). This suggests a dual or mixed standard of review; the district court's findings of fact are reviewed for substantial competent evidence, and the ultimate legal conclusion is reviewed de novo. However, neither party contends the facts in this case are disputed regarding Johnson's waiver of jury trial; thus, the issue is reviewed de novo. See *State v. Morfitt*, 25 Kan. App. 2d 8, 11, 956 P.2d 719, *rev.*

*denied* 265 Kan. 888 (1998) (considering whether the defendant waived his right to proceed with a trial by an 11-person jury).

The Sixth and Fourteenth Amendments to the United States Constitution, as well as §§ 5 and 10 of the Kansas Constitution Bill of Rights, guarantee a criminal defendant the right to a jury trial. The constitutional right to a jury trial is triggered when the defendant is facing potential imprisonment for the offense exceeding 6 months. *State v. Sykes*, 35 Kan. App. 2d 517, 523, 132 P.3d 483, *rev. denied* 282 Kan. 795 (2006).

The criminal defendant's constitutional right to a jury trial may be waived. But since the right to trial by jury is constitutionally preserved, waiver of the right must be strictly construed to afford a defendant every possible opportunity to receive a fair and impartial trial by jury. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). The test for determining the validity of a jury trial waiver is whether the waiver was knowingly and voluntarily made, and the waiver of the right to a jury trial will not be presumed from a silent record. 216 Kan. at 589. In order to provide additional safeguards against involuntary waiver and to minimize uncertainty in determining whether the defendant knowingly and intelligently waived the right to a jury, the *Irving* court held: "[I]n order for a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record." 216 Kan. at 590.

Here, the parties submitted a stipulation of facts to the district court. The stipulation contained the following material provision:

"1. Defendant has been advised of his constitutional rights, including but not limited to, his right to a trial by jury, a right to confront the witnesses against him, the right to testify on his own behalf if he so chooses to do so, his right to present evidence and witnesses on his own behalf, his right to be proven guilty beyond a reasonable doubt, his right to be personally present at trial and his right to present both opening and closing arguments; *being duly advised of those rights by counsel*, Defendant freely, voluntarily, and intelligently agrees to waive said rights and to enter into this stipulation of fact for the Court to determine Defendant's guilt or innocence by a bench trial." (Emphasis added.)

The State acknowledges that the record fails to reflect that the district court personally advised Johnson of his right to a jury trial.

But according to the State, the stipulation of facts either served as a waiver of Johnson's jury trial right or served to invite the district court into purported error. However, as Johnson points out, the stipulation expressly stated that he was duly advised of his right to a jury trial *by counsel*. Pursuant to *Irving*, in order for a criminal defendant to effectively waive his or her right to a jury trial, the defendant must first be advised *by the court* of his or her right to a jury trial. 216 Kan. at 590.

Kansas courts have consistently held that a criminal defendant's jury trial waiver is ineffective when the record on appeal fails to show that the district court personally advised the defendant of his or her right to a jury trial. See, *e.g.*, *Duncan*, 44 Kan. App. 2d at 1038, 1040-41 (specifying that under *Irving* there are two conditions for waiver: [1] the district court's inquiry and [2] the express waiver in writing or on the record, and reversing because the record was silent); *Bowers*, 42 Kan. App. 2d at 741 (attorney's request for bench trial did not waive defendant's right to a jury trial, and there was no valid waiver where district court failed to advise him of the right); *State v. Larraco*, 32 Kan. App. 2d 996, 1001-02, 93 P.3d 725 (2004) (reversed because defendant did not personally waive jury trial rights in open court and there was no advice from the court or written waiver); *State v. Simpson*, 29 Kan. App. 2d 862, 869, 32 P.3d 1226 (2001) (no alternative but to reverse and remand because trial court did not personally advise defendant of his right to 12-person jury).

We acknowledge the fact that the parties submitted a written stipulation to the district court whereby Johnson expressly waived his right to a trial by jury. Now Johnson complains on appeal that he did not effectively waive this constitutional right. Although this situation may come close to invited error, we disagree with the State's assertion that Johnson is procedurally barred from raising this issue on appeal. While a criminal defendant may waive his or her right to a jury trial in writing, the written waiver must indicate that the defendant was first advised by the court of this constitutional right in order to be effective. The written stipulation submitted by the parties herein contains no such language.

This case presents a prime example of the salutary effect of requiring the court to personally advise the defendant of his or her trial rights. Included in the trial rights purportedly waived in the signed stipulation was the right to require the State to prove Johnson guilty beyond a reasonable doubt. We doubt if such an option would have been presented to Johnson by the trial judge, nor do we expect Johnson would have agreed to such a notion had it been directly put to him by the judge in open court.

Here, there is no indication in the record that the district court advised Johnson of his jury trial rights. Therefore, according to *Irving* and the case law cited above, Johnson did not effectively waive his right to a jury trial, which constitutes reversible error. See also *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, 528, 154 P.3d 1170 (2007) ("It is well settled [separate from the ineffective assistance of counsel context] that deprivation of the right to a jury trial is automatically reversible error."). Accordingly, the case is remanded to district court for further proceedings where Johnson may either exercise or properly waive his right to a jury trial. We do not need to reach Johnson's final claim that the district court violated his right to be present at all stages of his criminal proceeding.

Affirmed in part, reversed in part, and remanded.