No. 101,292

STATE OF KANSAS, *Appellee*, v. ANTHONY R. FRYE, *Appellant*.

(277 P.3d 1091)

Opinion filed May 4, 2012.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Bethany C. Fields*, deputy county attorney, argued the cause, and *Kevin W. Martin*, legal intern, *Barry R. Wilkerson*, county attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Anthony Frye was convicted of aggravated battery at a bench trial. He appealed to the Court of Appeals, claiming that (1) the district court failed to insure a valid waiver of Frye's right to a trial by jury; and (2) the evidence was insufficient to support Frye's conviction for severity level 7 aggravated battery. The Court of Appeals reversed on the jury trial issue and declined to decide the sufficiency of the evidence challenge. *State v. Frye*, No. 101,292, 2010 WL 744799 (Kan. App. 2010) (unpublished opinion). The State petitions for review, arguing that the Court of Appeals decision was erroneous because the jury trial issue was not properly preserved for appeal and, in the alternative, because the handwritten waiver Frye signed at trial was sufficient to establish a knowing and voluntary waiver of the right to a jury trial. The State also asks us to find that the evidence was sufficient to support the district court's guilty verdict. Finding that the Court of Appeals had jurisdiction to consider the validity of Frye's jury trial waiver; that the district court did not advise Frye of his right to a jury trial or effectively accept a jury trial waiver; and that the evidence was sufficient to support the district court's verdict of guilty of severity level 7 aggravated battery, we affirm the Court of Appeals and remand the case to the district court for a new trial.

## FACTUAL AND PROCEDURAL OVERVIEW

The incident giving rise to Frye's charges occurred in the early morning hours of August 8, 2007, at a party hosted by Frye's neighbor. After arriving home about 2 a.m., Frye crashed his neighbor's party and spent the next 30 minutes or so drinking and talking with Jared Lund, who would become the victim in this case.

Frye began walking home, after being asked to leave because the party was winding down. En route home, he heard some of the partygoers talking about his strange behavior and heard James Stewart say, "We should have whooped his ass." That comment prompted Frye to return to the party in an agitated state, with clenched fists and breathing heavily, where he had a heated exchange with Stewart.

Believing that he had developed a rapport with Frye, Lund stepped in to try to diffuse the situation. Frye testified that he felt crowded by Lund and some of the others, and he repeatedly asked them to back away. One of Lund's friends encouraged him to step away because he feared that Frye was about to hit Lund. When Lund looked back from addressing the friend, Frye struck him in the face with an elbow. The blow knocked out two of Lund's teeth and severely damaged two others—injuries that required extensive orthodontic work to repair.

Frye was initially charged with misdemeanor battery and, at a scheduling conference, Frye's attorney informed the court that he would prefer a bench trial. But the complaint was subsequently amended to charge a felony, and after a preliminary hearing on March 4, 2008, Frye was bound over for trial on a count of level 4 aggravated battery. At the arraignment 6 days later, Frye requested a "jury trial setting," and the court set a pretrial conference for May 19, 2008.

The record is silent as to what happened in the case thereafter, until the district court conducted a *bench* trial on May 30, 2008. The only explanation as to why the case was tried to the bench is the prosecutor's statement, at the beginning of the bench trial, that defense counsel "and her client have signed a waiver of jury trial that was originally scheduled at this time," and the prosecutor's later statement that he "thought this was going to be a jury trial until late yesterday afternoon." The transcript does not reflect that the trial court advised Frye of his right to a jury trial or made any further inquiry into the purported waiver. Likewise, the record contains no defense objection to the bench trial.

At the conclusion of the bench trial, the court found that the State had failed to prove beyond a reasonable doubt that Frye

intended to cause Lund great bodily harm, as required for the charge of severity level 4 aggravated battery. Instead, the court found that the evidence established that Frye was guilty of the lesser included offense of severity level 7 aggravated battery for having intentionally caused physical contact in a rude, insulting, or angry manner and in a manner whereby great bodily harm, disfigurement, or death could have been inflicted.

Notwithstanding that the issue was raised for the first time on appeal, the Court of Appeals considered Frye's challenge to his jury trial waiver because a resolution of the issue was "necessary to serve the ends of justice or to prevent a denial of fundamental rights." *Frye*, 2010 WL 744799, at *1. The panel reversed Frye's conviction and remanded the case, finding that the trial court had erred in failing to specifically advise Frye on the record of his right to jury trial before proceeding with the bench trial. 2010 WL 744799, at *2. Specifically, the panel concluded that the trial court had not complied with the waiver requirements set forth in *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). The panel also concluded that its reversal rendered unnecessary any consideration of the sufficiency of the evidence issue. *Frye*, 2010 WL 744799, at *2. This court granted the State's petition for review, which raised both the issue of the jury trial waiver and the sufficiency of the evidence issue.

### PRESERVATION OF THE JURY TRIAL WAIVER ISSUE

As part of its challenge to the Court of Appeals holding on the jury trial waiver issue, the State contends that the panel should not have considered the issue because appellate courts lack jurisdiction to determine the validity of a jury trial waiver when the argument was not raised before the district court. The State suggests that this court's decision in *State v. Luna*, 271 Kan. 573, 577, 24 P.3d 125 (2001), prohibited the Court of Appeals' review of Frye's jury trial waiver. We disagree.

*Standard of Review*

The State does not favor us with a standard of review for the preservation portion of its jury trial waiver argument. It simply

contends, erroneously as will be discussed later, that the question of whether a defendant effectively waived jury trial is a question of fact, which would be reviewed for substantial competent evidence. To the contrary, the question of whether appellate courts lack jurisdiction to determine the validity of a jury trial waiver when the issue is raised for the first time on appeal is a question of law subject to our unlimited review. See *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007) (whether jurisdiction exists is a question of law subject to unlimited review).

*Analysis*

The Court of Appeals acknowledged that "[o]rdinarily, constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009)." *Frye*, 2010 WL 744799, at *1. In turn, the State acknowledges that the Court of Appeals cited to *State v. Hawkins*, 285 Kan. 842, 176 P.3d 174 (2008), for the proposition that there are exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, one of which is where "consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights." *Frye*, 2010 WL 744799, at 1.

The State responds to the *Hawkins* citation with an apparent non sequitur. The State's petition for review asserts that Frye's attorney is presumed to be competent because he was a member in good standing of the bar and that Frye has not proved his attorney to be ineffective under the test from *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2502, 80 L. Ed. 2d 674 (1984). The issue on appeal is not a claim of ineffective assistance of counsel. Perhaps the State was attempting to counter any notion that Frye was denied his fundamental right to counsel, albeit the Court of Appeals was quite explicit in finding that a preservation exception applied because of "the denial of the right to a jury trial." *Frye*, 2010 WL 744799, at *1.

Regardless of which fundamental right needed to be protected on appeal in this case, the point is that this court continues to apply exceptions to the general rule that issues not raised before the

district court cannot be raised on appeal, *i.e.*, we continue to apply exceptions to the preservation rule. See, *e.g.*, *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010) (reciting three exceptions to general preservation rule, including "consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights"). And, the very fact that exceptions exist establishes the character of the preservation rule as being prudential, rather than jurisdictional. An appellate court does not have discretionary power to entertain an appeal over which it lacks jurisdiction. *Cf. Flores Rentals v. Flores*, 283 Kan. 476, 481, 153 P.3d 523 (2007) ("Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute; the appellate courts do not have discretionary power to entertain appeals from all district court orders."). Likewise, an appellate court cannot create equitable exceptions to jurisdictional requirements. *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, Syl. ¶ 3, 260 P.3d 387 (2011). Accordingly, this court could not create and apply exceptions to the preservation rule if it were a jurisdictional requirement for appellate review.

The State relies heavily on the holding in *Luna*. There, a juvenile challenged his certification to be tried as an adult and asserted that he had not knowingly and voluntarily waived his constitutional right to a jury trial. Then Chief Justice McFarland, writing for the court, summarized the facts relevant to the jury trial waiver in a few sentences, which we will edit only slightly. The day before his jury trial was to begin, Luna appeared before the district court to request a waiver of trial by jury. After Luna advised the court that it was his decision to waive a jury trial and that his choice was not the result of pressure, promises, or threats, the district court accepted the waiver. A bench trial was commenced on June 30, 1999, but part way through the trial, it was continued at defense counsel's request until August 10, 1999.

The next short paragraph of the Chief Justice's opinion related that Luna had not sought to withdraw his jury trial waiver or otherwise object in the district court. Further, the jury trial waiver did not appear in Luna's docketing statement, but rather "[t]he issue

first appears in the defendant's appellate brief, filed April 21, 2000." 271 Kan. at 577.

The next paragraph contained the court's holding and rationale, which we will set out in its entirety:

"Where constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review, and the exceptions to that rule do not apply in this case. See *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). Under the circumstances, we conclude the waiver of the jury trial issue is not properly before us, nor was it properly before the Court of Appeals." 271 Kan. at 577.

In *State v. Mason*, 268 Kan. 37, 986 P.2d 387 (1999), to which *Luna* referred, the court recited the general preservation rule with respect to constitutional grounds raised for the first time on appeal and described the "exceptional circumstances" which would allow an appellate court to nevertheless consider such issues. Then, *Mason* court disagreed with the defendant's contention that his case involved such an exceptional circumstance, explaining its decision in the following sentence: "Although the issue is a legal one, Mason's argument is without merit and his cited authority neither relevant nor applicable." 268 Kan. at 39.

Both *Luna* and *Mason* acknowledged that there are exceptions to the general preservation rule. As noted above, the very existence of court-made exceptional circumstances precludes our interpreting *Luna* as impliedly holding that the preservation rule is jurisdictional. Moreover, we cannot divine from *Luna*'s cursory holding that the decision intended to establish a bright-line rule that the general preservation rule is always to be strictly applied without exception in cases involving a challenge to a jury trial waiver.

To the contrary, an opinion that recites scarcely more rationale than the equivalent of "because we say so" is arguably of marginal precedential value and certainly should not be the foundation for a watershed change in our law. Moreover, the issue presented in this case—whether the court has advised a defendant of his or her right to a jury trial—should be one of the last to be denied the opportunity for exceptional treatment. If the district court fails to properly advise a defendant of the nature and extent of his or her constitutional right to a jury trial, how does that defendant know

to object to the court's failure to inform, *i.e.*, how does the defendant know what the defendant does not know? Granted, defense counsel should know, but the ability to waive the fundamental right to a trial by jury rests solely with the defendant and *Irving* informs us that the responsibility to inform a defendant of his or her jury trial right rests squarely with the presiding judge.

From the record before us in this appeal, it appears as if the district court made no effort to ascertain the validity of the rather unusual handwritten jury trial waiver. Nor does the record reflect that the court advised Frye of his right to a trial by jury. Under those circumstances, we can find no error in the Court of Appeals' determination to apply an exception to the general preservation rule.

### Validity of Handwritten Waiver

The State argues in the alternative that the district court was correct to accept the handwritten waiver because Frye knowingly and voluntarily waived his right to a jury trial. That declaration assumes a great deal of information that is not in the record on appeal, and we must reject it.

### Standard of Review

As noted earlier, the State contends that the question of whether a defendant waived the right to jury trial is purely a factual question, subject to a substantial competent evidence standard of review. That contention is incomplete. We do employ a substantial competent evidence standard to examine the factual underpinnings of a district court's decision to accept a jury trial waiver. But the question of whether those settled or undisputed facts constitute a voluntary and knowing waiver of defendant's right to a jury trial is a legal question subject to unlimited appellate review. See *State v. Barnes*, 293 Kan. 240, 260, 262 P.3d 297 (2011).

### Analysis

The parties' recitations concerning a jury trial were somewhat curious throughout this proceeding. In its petition for review, the State declares that Frye's attorney "first indicated a preference for a bench trial setting at a scheduling hearing on December 17,

2007." But the dates related by the State indicate that, at the time of the first purported statement of preference, Frye was charged with a misdemeanor. K.S.A. 22-3404(1) provides that "[t]he trial of misdemeanor cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after first notice of trial assignment is given to the defendant or such defendant's counsel." In other words, defense counsel's oral statement of preferred method of trial was of no avail at that point.

Later, after the complaint was amended to charge a felony and Frye was bound over at preliminary hearing and subsequently arraigned, his counsel requested a "jury trial setting." At this point, however, the defendant did not need to take any action to receive a jury trial; the default in a felony case is a jury trial. As the Court of Appeals correctly observed:

"K.S.A. 22-3403(1) requires all felony cases be tried to a jury unless the defendant and the State, with the district court's consent, submit the matter to a bench trial. The right to a jury trial is guaranteed to a criminal defendant under the United States Constitution and the Kansas Constitution. U.S. Const. Amend. VI; Kan. Const. Bill of Rights §§ 5, 10." *Frye,* 2010 WL 744799, at °1.

In other words, not only was Frye entitled to a jury trial under the federal and state Constitutions, but, pursuant to Kansas statutory law, a bench trial required the explicit approval of all concerned: the defendant, the prosecutor, and the court. K.S.A. 22-3403(1). So, again, defense counsel's request for a jury trial setting was superfluous.

The Court of Appeals assessed the validity of Frye's purported jury trial waiver under the requirements set forth by the Kansas Supreme Court nearly 40 years ago, in *State v. Irving,* 216 Kan. 588, 589, 533 P.2d 1225 (1975). *Irving* required that a jury trial waiver cannot be accepted " 'unless the defendant, after being advised *by the court* of his [or her] right to trial by jury, personally waives his [or her] right . . . in writing or in open court for the record.' " (Emphasis added.) 216 Kan. at 590 (quoting American Bar Association Standards for Criminal Justice, Trial by Jury, Section 1.2[b], p. 7).

The State contends that Frye *did* effect a waiver through the handwritten document filed with the court. That document is in

the record on appeal and, quite frankly, it raises more questions than it answers. First, it is not dated. We cannot rule out the possibility that Frye executed the waiver when he was charged with a misdemeanor and not constitutionally entitled to a jury trial. In that event, the waiver would have been ineffectual, or at least unnecessary, when executed.

Next, the alleged waiver contains a purported signature for the "Attorney for Mr. Frye," albeit that signature follows the word, "Approved," *i.e.*, the attorney did not attest that the above signature on the waiver is that of his client, Anthony R. Frye. We do not know for certain who handwrote the waiver—Frye or his attorney or someone else. Finally, the text of the waiver, in its entirety, reads: "I, Anthony R. Frye, do hereby waive (give up) my right to a Jury Trial in the above captioned case and desire to try the case to the Court." Pointedly, the document does not even hint that Frye may actually know what his "right to a Jury Trial" may be or understand what it means to "try the case to the Court." In the context of a defendant's right to counsel, we have said that it is not up to the defendant to know what "fully advised" means, but rather "[i]t is the judge who is burdened with assuring that [the defendant's] rights have been adequately protected." *State v. Hughes*, 290 Kan. 159, 171, 224 P.3d 1149 (2010).

Notwithstanding the efficacy of the handwritten waiver, however, the State fails to clear the *Irving* hurdle that requires that the written waiver be *after* the defendant is "advised *by the court* of his right to a jury trial." (Emphasis added.) 216 Kan. at 590. There is absolutely nothing in the record indicating that the district court made any attempt to advise Frye of the nature and extent of his constitutional right to a trial by jury.

The State attempts to side-step the requirement that the *court* advise the defendant of his or her jury trial right by arguing that the totality of the circumstances indicate that Frye really wanted a bench trial. One of the "circumstances" relied upon by the State is the statement by Frye's counsel that he preferred a bench trial, way back when he was charged with a misdemeanor. Of course, that argument is totally unavailing because, at the time of the stated preference, Frye did not have a constitutional right to a jury trial

for the misdemeanor with which he was charged. Actually, the State's argument accentuates the reason for the requirement that the district court advise a criminal defendant of his or her rights under the circumstances in which the defendant is placed. Here, Frye's rights changed during the course of his prosecution, when the charges were elevated from a misdemeanor to a felony.

In short, the district court did not comply with the 37-year-old *Irving* requirements to accept a valid waiver of a defendant's right to a trial by jury. The bench trial verdict must be reversed and the matter remanded to afford Frye his constitutional right to a trial by jury or to effect a valid waiver of the same.

### SUFFICIENCY OF THE EVIDENCE

The State also petitioned for review on the issue of the sufficiency of the evidence to support the district court's guilty verdict on the severity level 7 version of aggravated battery. The Court of Appeals opined that it was unnecessary to consider the sufficiency of the evidence issue, given that it was reversing on the jury trial issue. *Frye*, 2010 WL 744799, at *2. We must respectfully disagree with that determination. If Frye were to successfully challenge the sufficiency of the evidence to support his conviction, the remedy is an outright reversal, rather than a remand for a new trial. See *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007) ("If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible."). Therefore, we discern that we must consider whether the district court's verdict was supported by substantial competent evidence in order to determine the appropriate disposition of the case, after appeal.

### *Standard of Review*

The State suggests that we apply a clearly erroneous standard of review because this was a bench trial. But we have said that convictions arising from bench trials and those arising from jury trials are reviewed by this court utilizing the same standards on appeal. See *State v. Houpt*, 210 Kan. 778, 780, 504 P.2d 570 (1972). Under that standard, this court reviews sufficiency of the evidence claims

by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Martinez*, 290 Kan. 992, 1003, 236 P.3d 481 (2010); *State v. Johnson*, 258 Kan. 61, 67, 899 P.2d 1050 (1995) (applying standard to appeal from a bench trial conviction).

" 'In reviewing the sufficiency of the evidence, this court will not reweigh the evidence. It is the jury's function, not ours, to weigh the evidence and determine the credibility of witnesses.' " *State v. Cosby*, 293 Kan. 121, 134, 262 P.3d 285 (2011) (quoting *State v. Doyle*, 272 Kan. 1157, 1162-63, 38 P.3d 650 [2002]).

*Analysis*

The version of aggravated battery for which the district court convicted Frye is defined in K.S.A. 21-3414(a)(1)(C) as follows: "[I]ntentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Before the Court of Appeals, Frye did not dispute the physical aspects of the crime, *i.e.*, that he elbowed Lund in the mouth. Rather, he contended that the State had failed to prove that he possessed the requisite intent.

The State tried Frye on the severity level 4 version of aggravated battery which required the State to prove that defendant intentionally caused great bodily harm to or disfigurement of another person. K.S.A. 21-3414(a)(1)(A). The district court found that the State had failed to prove that Frye intended to cause the serious injuries that resulted from his act. But the district court found that "the evidence does substantiate a claim that there was an intentionally caused physical contact in a rude, insulting, or angry manner or in a manner whereby great bodily harm, disfigurement or death could have been inflicted." We agree.

In his brief to the Court of Appeals, Frye appears to suggest that the intent required for the severity level 7 version of aggravated battery is something more than just an intentional contact with another in a rude, insulting, or angry manner. He argues that the defendant must intend to make the contact in a manner that could

cause great bodily harm. That argument tends to conflate the severity level 7 intent to make contact with the severity level 4 intent to cause great bodily harm. We do not discern that the intent provisions overlap in that way.

The severity level 7 version addresses the defendant's intention to act. The manner in which the act occurred, *i.e.*, the instrument or manner used to make contact, is simply another fact to be proved, but it is not part of the *mens rea* of that offense. In contrast, the severity level 4 version does require an intent to do the harm that results. *Cf. State v. Deal*, 293 Kan. 872, 269 P.3d 1282, 1284 (2012) (focusing on the distinction between an intention to act, *i.e.*, to hit, and an intention to obtain a result , *i.e.*, to kill).

Essentially, then, to uphold Frye's conviction for the severity level 7 version of aggravated battery, we must find that there was sufficient evidence from which the trial court could reasonably infer that Frye intended to hit Lund with his elbow; that the contact was not accidental. There was testimony from a number of eyewitnesses indicating that Frye returned to the party, looking as though he was ready to fight. But we really need look no further than Frye's own testimony.

The prosecutor gave Frye an opportunity to clarify his intent by inquiring on cross-examination whether he hit Lund because he felt crowded or whether the contact was unintentional. Yet, Frye did not say that the contact was unintentional. Instead, he responded: "The damage was not intended. I did not want him to get hurt. I just wanted him to get back from me. That's all I wanted. That's it."

Obviously, the trial court took Frye at his word. The court refused to convict Frye of severity level 4 aggravated battery because "[t]he damage was not intended." On the other hand, Frye's refusal to say that the act was accidental or unintentional, especially when coupled with the other circumstantial evidence, supported the trial court's finding that Frye intended to make contact with Lund in a rude, insulting, or angry manner. The evidence was sufficient to support the conviction.

Reversed and remanded for a new trial.