NOT DESIGNATED FOR PUBLICATION

No. 113,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC C. STAMPS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed July 15, 2016. Conviction reversed, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellant Defender Office, and *Adam D. King*, legal intern, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.


*Per Curiam*: Eric C. Stamps appeals his conviction for criminal nonsupport of a child. Stamps contends the district court erred in (1) failing to fully advise him of his right to a jury trial and (2) failing to regard his financial circumstances under K.S.A. 21-3605(a)(4) prior to entering an order for support payments. Based on our review of the record, we find Stamps did not effectively waive his constitutional right to a jury trial. For this reason, his conviction must be reversed, his sentence vacated, and the case

1

remanded with directions for the district court to fully inform Stamps of his right to a jury trial. Stamps may then choose to exercise that right or make an informed waiver.

FACTS

Stamps was ordered to pay child support to the custodial parent of his daughter beginning in 2002. Stamps was employed as a basketball coach, which he contended was a seasonal and unpredictable job. Based on the nature of this job, Stamps asserted he was able to pay his child support obligations regularly for some periods of time but irregularly for others. In August 2008, Stamps was charged with criminal nonsupport of a child for the time period between August 1, 2007, and August 1, 2008. At the time the charge was filed, the State alleged Stamps owed $3,975.06 in arrearages.

In November 2008, Stamps and the State entered into a written stay agreement. In exchange for staying prosecution of the criminal nonsupport charge, Stamps agreed to pay $385 per month in support and an additional $50 per month toward arrearages beginning in December 2008. As part of the stay agreement, Stamps also stipulated to the facts contained in the State's probable cause affidavit, including facts about his work and child support payment history as well as a statement acknowledging that his child was in necessitous circumstances. The agreement also included the following recitation: "Thereupon, the defendant, after consultation with counsel, waives trial by jury." Finally, the agreement provided that if Stamps violated any term or condition of the agreement, the district court was authorized to set aside the stay agreement and try the case on the stipulated facts set forth in the agreement.

At the hearing on the stay agreement, the district court asked defense counsel whether Stamps had "gone over the stay order" and was "agreeable to the terms and conditions in the stay order," to which defense counsel replied affirmatively. The court did not personally question Stamps about the jury trial waiver language in the agreement

2

or otherwise ask Stamps whether he wanted to waive the right to a jury trial or whether he understood that he was waiving his right to a jury trial. The court ultimately approved the agreement and filed a journal entry dated November 6, 2008, staying prosecution of the criminal nonsupport charge against Stamps.

In June 2009, Stamps began to fall behind on the payments required under the stay agreement. The State filed a motion to revoke the stay agreement in September 2009. After a hearing on the motion in December 2009, the district court took the matter under advisement. Stamps continued to make some payments under the agreement, and the case was continued for several years. The State withdrew its motion in January 2013 because Stamps was completely caught up with his payments, including all arrearages. But the State refiled the motion in March 2013 after Stamps lost his employment and again fell behind on his child support obligations. The March 2013 motion to revoke the stay agreement was continued for over 1 year.

In October 2014, the district court ultimately revoked the stay agreement. In November 2014, the court held a bench trial on stipulated facts and found Stamps guilty on the sole count of criminal nonsupport of a child under K.S.A. 21-3605, a severity level 10 felony offense. Pursuant to the nondrug grid of the sentencing guidelines in Kansas, the authorized penalty for this felony conviction based on Stamps' criminal history score of I is presumptive probation with an underlying sentence of 5 to 7 months in prison. See K.S.A. 21-4704. In January 2015, the court imposed a sentence of 12 months' probation with an underlying 6-month prison sentence and an order for $8,032.04 in restitution.

ANALYSIS

Stamps alleges two points of error on appeal requiring his conviction to be vacated. First, Stamps claims that his waiver of jury trial in the November 2008 written stay agreement was ineffective and that the district court violated his constitutional right

3

to a jury trial by failing to effectuate a valid waiver of his jury trial rights on the record. Second, Stamps argues that the district court failed to comply with K.S.A. 21-3605(a)(4), the statute governing nonsupport of a child that was in effect when the stay agreement was signed in 2008. We address each alleged error in turn.

1. *Waiver of jury trial*

    a. *Jurisdiction*

Stamps did not raise the issue of effective jury trial waiver to the district court. Issues not raised at the district court level generally cannot be raised on appeal. *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006). However, exceptions may be granted if "'consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights.'" *State v. Barnes*, 293 Kan. 240, 255, 262 P.3d 297 (2011).

A jury trial unquestionably entails a fundamental right secured to criminal defendants under the Sixth Amendment to the United States Constitution and Sections 5 and 10 of the Kansas Constitution Bill of Rights. *State v. Parker*, 301 Kan. 556, 563, 344 P.3d 363 (2015). Consideration of the denial of the right to a jury trial is therefore necessary to prevent the denial of a fundamental right. *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). Kansas courts have repeatedly so held. See *State v. Beaman*, 295 Kan. 853, 856-58, 286 P.3d 876 (2012); *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012); *State v. Johnson*, 46 Kan. App. 2d 387, 397, 264 P.3d 1018 (2011), *rev. denied* 293 Kan. 1111 (2012). This court may hear the jury trial waiver issue for the first time on appeal to prevent the denial of Stamps' fundamental rights.

    b. *Standard of review*

This court reviews the factual underpinnings of a district court's decision to accept a jury trial waiver for substantial competent evidence. However, when the facts

4

underlying the decision are undisputed, as they are here, the question of whether a defendant voluntarily and knowingly waived his or her right to a jury trial is one of law, subject to unlimited appellate review. *Barnes*, 293 Kan. at 260.

c. *Discussion*

A defendant may waive the fundamental constitutional right to a jury trial, but the court must ensure that such a waiver is voluntary and knowing. Whether that test has been met depends on the particular facts and circumstances of the case. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). A jury trial waiver is strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury. *Beaman*, 295 Kan. at 858. Waiver will not be presumed from a silent record. *Irving*, 216 Kan. at 589.

The responsibility to inform the defendant of his or her right to a jury trial rests squarely with the district court. *Frye*, 294 Kan. at 370-71; *Irving*, 216 Kan. at 590; see *Johnson*, 46 Kan. App. 2d at 399 ("Kansas courts have consistently held that a criminal defendant's jury trial waiver is ineffective when the record on appeal fails to show that the district court personally advised the defendant of his or her right to a jury trial."). Here, there is no indication in the record—either in the purported written waiver or at the hearing on the matter—that the district court fulfilled this responsibility.

In order for a criminal defendant to effectively waive his or her right to a jury trial, the defendant "must personally waive this right in writing or in open court for the record." *Irving*, 216 Kan. at 590. The State argues that Stamps waived his jury trial right in writing when he and his attorney signed the stay agreement, which states: "Thereupon, the defendant, after consultation with counsel, waives trial by jury." The State also points to the closing language of the agreement: "[T]he defendant . . . , by signature, hereby

consents to abide by all provisions of this Journal Entry and acknowledges knowingly and voluntarily waiving any and all legal rights as provided in this document."

Where a jury trial waiver is in writing, Kansas caselaw "requires that the written waiver be *after* the defendant is 'advised *by the court* of his right to a jury trial.'" *Frye*, 294 Kan. at 373 (quoting *Irving*, 216 Kan. at 590); see *Johnson*, 46 Kan. App. 2d at 399 ("[T]he written waiver must indicate that the defendant was first advised by the court of this constitutional right in order to be effective."). The mere form of a jury trial waiver alone does not ensure a court fully considered the facts and circumstances surrounding a defendant's waiver of his or her jury trial right, which is necessary in deciding whether a knowing and voluntary waiver occurred. See *Beaman*, 295 Kan. at 861. There is nothing in the record here indicating that the district court made any attempt to advise Stamps of the nature and extent of his constitutional right to a jury trial prior to Stamps signing the stay agreement.

The State also points to language in the stay agreement that Stamps "waives any constitutional right to confront the witnesses or evidence as a part of this stipulation of facts" and "agrees that the matter of determining guilt based upon these [*sic*] stipulated set of facts is to be considered by the court without any further evidence being presented or argument being made by either party." But the general waiver language does not indicate the court advised Stamps about the nature of his right to a trial by jury as opposed to a trial to the court. See *Frye*, 294 Kan. at 373 ("Pointedly, the document does not even hint that Frye may actually know what his 'right to a Jury Trial' may be or understand what it means to 'try the case to the Court.'"). Without such an understanding, the jury trial waiver cannot be voluntary and knowing.

In this case, the district court did not address Stamps *at all* regarding his right to a trial by jury at the hearing on the stay agreement, and the court only briefly addressed Stamps' attorney, Karen Ebmeier. The entire discussion on the matter was as follows:

6

```
"THE COURT:        Ms. Ebmeier, has your client gone over the stay order?

"MS. EBMEIER:   Yes, we have reviewed the terms.

"THE COURT:        And he is agreeable to the terms and conditions in the stay
order?

"MS. EBMEIER:   That's correct, Judge.

"THE COURT:        And he is going to follow those, right?

"MS. EBMEIER:   He plans to follow them."
```

The only statement the district court made directly to Stamps was to admonish Stamps to follow the terms of the stay agreement because "[b]ehind this is potential criminal prosecution for criminal nonsupport [of a child]." Simply confirming that Stamps consented to all of the terms in the agreement, without even acknowledging that one of the terms was a jury trial waiver, did not in any way fulfill the court's responsibility to personally ensure that Stamps' jury trial waiver was voluntary and knowing. See *Frye*, 294 Kan. at 373 (error where "[t]here is absolutely nothing in the record indicating that the district court made any attempt to advise [the defendant] of the nature and extent of his constitutional right to a trial by jury"); see also *State v. Cervantes-Cano*, No. 107,179, 2013 WL 1943060, at *4 (Kan. App.) (unpublished opinion) (error where district court "failed to engage [the defendant] in any discussion, let alone a detailed discussion, to verify that [the defendant] understood the nature and extent of the right being waived"), *rev. denied* 298 Kan. 1204 (2013).

Based on the facts and circumstances of this case, we find that Stamps' jury trial waiver was not effective. Accordingly, Stamps' conviction must be reversed. See *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, 528, 154 P.3d 1170 (2007) ("It is well settled . . . that deprivation of the right to a jury trial is automatically reversible error.").

2. *Regard for the circumstances and the financial ability or earning capacity of the defendant*

7

Stamps next argues that the district court failed to comply with the mandatory requirements set forth in K.S.A. 21-3605(a)(4), the statute governing nonsupport of a child that was in effect when the stay agreement was signed in 2008. Although we have reversed Stamps' conviction on other grounds, we will address this issue because it may arise on remand. See *State v. Jefferson*, 297 Kan. 1151, 1169, 310 P.3d 331 (2013) (courts may address issues likely to arise on remand when reversing on other grounds).

The subsection of the statute cited by Stamps provides alternative and supplemental penalties a district court is permitted to impose upon a defendant while a criminal nonsupport of a child charge is pending against that defendant. Relevant here, the statute provides that

> "the court, in its discretion and *having regard for the circumstances and the financial ability or earning capacity of the defendant*, may enter an order . . . directing the defendant to pay a certain sum periodically, for a term not exceeding the period during which the obligation to support shall continue . . . ." (Emphasis added.) K.S.A. 21-3605(a)(4).

Relying on the italicized language above, Stamps alleges the district court did not make any factual findings to establish it regarded the circumstances and the financial ability or earning capacity of Stamps before ordering him to pay $385 per month and an additional $50 per month toward arrearages beginning in December 2008. Given the court's failure in this regard, Stamps argues the court must vacate the 2008 order and remand with directions for the district court to consider—on the record—his circumstances, financial ability, and earning capacity before making a decision about whether he should be required to pay a certain sum periodically and, if so, the amount of that sum.

a. *Jurisdiction*

8

Stamps admits that he did not raise this argument to the district court. Generally, issues not raised below cannot be raised on appeal. *Anthony*, 282 Kan. at 206. However, an exception applies when a newly asserted legal theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. *State v. Robinson*, 281 Kan. 538, 541, 132 P.3d 934 (2006). Because Stamps' argument is that the proper interpretation of the statute at issue mandated review of certain facts, this court has jurisdiction to hear this argument.

b. *Standard of review*

This court's standard of review of the statutory challenge is unlimited because interpretation of statutes raises a question of law. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

c. *Discussion*

To the extent this court is called upon to interpret a statute, it must first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. "When a statute is plain and ambiguous, the court must give effect to express language, rather than determine what the law should or should not be." *Robinson*, 281 Kan. at 539.

Stamps asserts that K.S.A. 21-3605(a)(4) is unambiguous and that it requires the court to consider the defendant's financial circumstances before entering an order for payment. We agree. A plain reading of the language does not indicate that "having regard for the circumstances" is discretionary. Giving words their ordinary meanings, the phrase "in its discretion *and* having regard for the circumstances" designates two separate modifiers of "the court . . . may enter an order." In other words, entering the order is discretionary, but considering the financial circumstances is not. Thus, the district court

9

was required to regard Stamps' circumstances and his financial ability or earning capacity.

Here, however, the record reflects that the district court did have regard for Stamps' financial circumstances at the time it approved the parties' stay agreement and filed its journal entry. The court issued its order by signing the agreement negotiated and signed by the parties, including Stamps. The agreement incorporated and attached an affidavit that recited the facts in the State's probable cause affidavit. Among the facts recited were Stamps' educational background, his then-current employment positions with the UMKC men's basketball program and as vice president and cofounder of the Kansas City Summer Pro Am, and several of Stamps' prior employment positions.

Stamps argues that the stay agreement and affidavit do not reflect his salary or explain why he was not able to meet his support obligations prior to the agreement. While the hearing on the stay agreement was brief and the district court did not directly question Stamps about his financial circumstances, the statute does not require the level of specific inquiry advocated by Stamps. The statute only requires that the court have regard for the defendant's circumstances and financial ability or earning capacity. The stay agreement itself shows that the court did have those relevant facts. Nothing in the statute requires the court to make findings on the record, and there is no indication that Stamps asked the court to do so. In the absence of a request by a party to the district court for additional findings, we generally assume that the court made the findings necessary to support its ruling. See *State v. Longoria*, 301 Kan. 489, 506, 343 P.3d 1128 (2015). We assume, then, that the district court had regard for Stamps' circumstances and financial ability or earning capacity at the time it approved the parties' stay agreement and filed its 2008 journal entry. Accordingly, the district court did not err in issuing the order on the stay agreement under K.S.A. 21-3605 based on the facts and circumstances of this case.

Conviction reversed, sentence vacated, and case remanded with directions.

10