No. 115,286

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLE ALAN CHAVEZ-MAJORS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Whether a defendant waived the right to jury trial is a factual question, analyzed under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review.

2.

In a felony case, a criminal defendant may waive the fundamental right to jury trial if the district court and State agree to the waiver. Jury trial waivers should be strictly construed to insure the defendant has every opportunity to receive a fair and impartial trial by jury.

3.

The test for determining the validity of a jury trial waiver is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends on the particular facts and circumstances in each case. For a criminal defendant to effectively waive the right to jury trial, the defendant

1

must first be advised by the court of the right to jury trial, and the defendant must personally waive the right in writing or in open court for the record. A jury trial waiver will not be presumed from a silent record.

4.

Under the United States and Kansas Constitutions, a search conducted without a warrant is per se unreasonable unless an established exception is applicable. Those exceptions include consent, search incident to a lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches of closely regulated businesses.

5.

A three-part test is applied in order to determine whether blood-alcohol evidence may be taken from a suspect without a warrant in conformance with the Fourth Amendment to the United States Constitution. The three requirements are: (1) There must be exigent circumstances in which the delay necessary to obtain a warrant would threaten the destruction of the evidence; (2) the officer must have probable cause to believe the suspect has been driving under the influence of alcohol; and (3) the procedures used to extract the blood must be reasonable.

6.

Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom known to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.

7.

Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer had reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

8.

While the metabolization of alcohol in the bloodstream with the resulting loss of evidence is not a per se exigency that qualifies as an exception to the Fourth Amendment's search warrant requirement, in the determination of whether a search warrant was required prior to obtaining a blood draw, metabolization of alcohol is a factor which may be considered among other exigent factors in the totality of circumstances in a particular case.

9.

Under the totality of circumstances in this case, which included the officer's detection of a strong odor of alcoholic beverages on the defendant's breath; an eyewitness report that the defendant operated his motorcycle at a high rate of speed when entering the parking lot which caused him to lose control and fall off his motorcycle; the corroboration of the eyewitness' account by the officer's personal investigation of the accident scene; and the officer's knowledge that the accident occurred in the parking lot of "party cove" where numerous partiers were drinking alcoholic beverages, the officer had probable cause to believe the defendant had committed the crime of driving while intoxicated.

10.

Under the totality of circumstances in this case, the metabolization of alcohol in the defendant's bloodstream coupled with the additional exigent factors that the officer arrived at the accident scene 10 minutes after being dispatched; upon arrival he was the

3

only officer available to attend to the seriously injured defendant and another injured person for 15 to 20 minutes while awaiting the arrival of emergency medical personnel; emergency medical personnel determined it was necessary to transport the defendant by ambulance a considerable distance to a hospital in another county for medical treatment; the officer conducted an accident scene investigation; and the officer testified that it would have taken "a significant amount of time," estimated at one-and-a-half to two hours to prepare a search warrant; there were exigent circumstances to justify a warrantless blood draw because the delay necessary to obtain a search warrant would have threatened the destruction of blood-alcohol evidence.

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed August 18, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Officer, for appellant.

*Brett D. Sweeney*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

BUSER, J.:  Kyle Alan Chavez-Majors appeals his aggravated battery while driving under the influence (aggravated battery while DUI) conviction, in violation of K.S.A. 2014 Supp. 21-5413(b)(3)(A). Chavez-Majors raises two issues on appeal. First, he contends his conviction should be reversed because he did not waive his right to jury trial prior to being tried and convicted at a bench trial. Second, Chavez-Majors claims the district court erred when it denied his pretrial motion to suppress the incriminating results of a blood draw which he argues constituted an unconstitutional warrantless search and seizure.

Upon our review, we hold the record does not show that Chavez-Majors knowingly and voluntarily waived his right to jury trial. Accordingly, his conviction is

4

reversed and the case is remanded to the district court with directions. We also hold the district court did not err in denying Chavez-Majors' motion to suppress evidence of the blood draw.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 24, 2014, Officer Tyler Burt, a park ranger assigned to El Dorado State Park in Butler County, responded to a report of a motorcycle accident in the park. Upon arrival at the scene, Officer Burt found a crowd of people and the motorcycle operator, Chavez-Majors, unconscious and severely injured. A young woman, Jenilee Christy, who was struck by the motorcycle while standing in the parking lot, also sustained serious injuries.

After attending to Christy, Officer Burt went to help Chavez-Majors and immediately noticed a strong odor of alcohol on his breath. At the scene, an eyewitness, Isaiah McElhone, told Officer Burt that he saw Chavez-Majors operate his motorcycle at a high rate of speed when entering the parking lot, lose control, and fall off the motorcycle which then slid across the parking lot before striking and injuring Christy.

Emergency medical service (EMS) personnel arrived at the scene and, given Chavez-Majors' serious medical condition, decided to transport him to a hospital in Wichita. Based on his investigation, Officer Burt believed that Chavez-Majors had operated his motorcycle while under the influence of alcohol. As a result, the officer directed EMS personnel to conduct a warrantless blood draw while Chavez-Majors was still unconscious. Later testing revealed that Chavez-Majors had a blood-alcohol level of .14 grams per 100 milliliters, almost twice the legal limit.

On December 31, 2014, Chavez-Majors was charged with aggravated battery while DUI, in violation of K.S.A. 2014 Supp. 21-5413(b)(3)(A), a severity level 5

5

nonperson felony; driving while license canceled, suspended, or revoked, in violation of K.S.A. 2014 Supp. 8-262(a)(1), a class B nonperson misdemeanor; no proof of liability insurance, in violation of K.S.A. 2014 Supp. 40-3104(d), a class B misdemeanor; illegal registration, in violation of K.S.A. 2014 Supp. 8-142, First, an unclassified misdemeanor; and driving at a speed greater than was reasonable, in violation of K.S.A. 8-1557, a traffic infraction.

Prior to trial, Chavez-Majors filed a motion to suppress evidence of the blood draw. After an evidentiary hearing, the motion was denied by the district court. Later, the State and Chavez-Majors reached a plea agreement wherein the parties agreed to stipulate to certain facts after the State filed an amended information that charged the defendant with aggravated battery while DUI. For his part, Chavez-Majors agreed to waive his right to jury trial and submit the case to the district court for a bench trial on written stipulated facts. In the stipulation, Chavez-Majors preserved for appeal his objection to the seizure of his blood at the crime scene.

On June 17, 2015, after considering the written factual stipulation, the district court found Chavez-Majors guilty of aggravated battery while DUI. On September 22, 2015, Chavez-Majors was sentenced to 57 months in prison, with 24 months' postrelease supervision. Chavez-Majors appeals.

WAIVER OF RIGHT TO JURY TRIAL

For his first issue on appeal, Chavez-Majors contends his "conviction of aggravated battery while [DUI] must be reversed because there was no proper waiver of his right to jury trial." The State responds:  "The lack of a contemporaneous objection to a waiver of jury trial should preclude the issue from review by the court." Alternatively:

6

"The State [concedes] that defendant did not offer a direct response to the issue of a waiver of a jury trial, but the court's acknowledgement in open court that the defendant was giving up jury trial rights in exchange for a dismissal of charges, effectively informed the defendant of his right to a jury trial."

*Preservation of the Jury Trial Waiver Issue*

We will first address the State's argument that Chavez-Majors failed to preserve this issue for appeal by failing to object in the district court that he did not knowingly and voluntarily waive his right to jury trial. The question of whether an appellate court lacks jurisdiction to determine the validity of a jury trial waiver for the first time on appeal is a question of law subject to our unlimited review. *State v. Frye*, 294 Kan. 364, 368-69, 277 P.3d 1091 (2012).

At the outset, Chavez-Majors candidly concedes "this matter was not raised in the court below" and that, in general, "constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court." However, Chavez-Majors claims that two exceptions to the general rule are applicable in this case. He asserts this issue is a question of law arising on proven or admitted facts that is determinative of the case and that consideration of this claim is necessary to serve the ends of justice or prevent a fundamental denial of rights.

As a general proposition, constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are, however, exceptions to this general rule, including the two exceptions claimed by Chavez-Majors. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (providing several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal).

7

Because issue preservation is a prudential rule, rather than a jurisdictional bar, appellate courts have the discretion to apply exceptions to the general rule. *Frye*, 294 Kan. at 368-69. In *Frye*, for example, our Supreme Court discounted the argument that a defendant may not raise the issue of jury trial waiver for the first time on appeal, reasoning "whether the court has advised a defendant of his or her right to a jury trial . . . should be one of the last to be denied the opportunity for exceptional treatment." 294 Kan. at 370. Moreover, several Kansas cases make clear that the issue of a defendant's waiver of jury trial may constitute an exception to the general rule which requires a defendant to contemporaneously object in the district court in order to preserve the issue for appeal. See *State v. Rizo*, 304 Kan. 974, 978-79, 377 P.3d 419 (2016); *Frye*, 294 Kan. at 368-69.

Because the factual record is uncontroverted in this case, the issue of whether Chavez-Majors validly waived his right to jury trial is a question of law that is determinative of this appeal. Moreover, because the right to jury trial is a fundamental right guaranteed under the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights §§ 5 and 10, *Frye*, 294 Kan. at 372, we are persuaded that Chavez-Majors has shown the two exceptions to the general rule should be applied in this case. As a result, we will review the merits of this issue.

*Validity of the Jury Trial Waiver*

At the pretrial conference held on June 17, 2015, both parties informed the district court they had agreed to a partial resolution of the case. This agreement provided that the State would dismiss all charges against Chavez-Majors except for aggravated battery while DUI. The parties also consented to a bench trial on the felony charge based on an agreed-upon written stipulation of facts. As articulated by the district judge:

8

"[THE COURT]:  . . . It does appear to the Court . . . there's been agreements to dismiss certain charges apparently *in contemplation of waiver of right to jury trial.* Is that the consideration for the dismissal of the other charges, Mr. Penny [prosecutor]?

"[MR. PENNY]:  Yes, Your Honor.

. . . .

"[THE COURT]:  . . . I 'm going to address the defendant personally and ask him now, have you had an opportunity to read fully this statement of stipulated facts that's been prepared and signed by both attorneys that would represent the trial evidence in your case?

"[MR. CHAVEZ-MAJORS]:  Yes, Your Honor.

"[THE COURT]:  All right. Is there anything further that you need to state about it?

"[MR. CHAVEZ-MAJORS]:  No, Your Honor." (Emphasis added.)

After considering the stipulated facts, the district court found Chavez-Majors guilty of aggravated battery while DUI.

In support of Chavez-Majors' claim that he did not validly waive his right to jury trial, he cites the well-known case, *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975), for the proposition that the "test for determining the validity of a waiver of the right to a jury trial is whether the waiver was voluntarily made by a defendant who knew and understood what he was doing." Chavez-Majors asserts that Irving also provides a two-part test which requires the district court to advise the defendant of his or her right to jury trial and to personally waive the right in writing or in open court.

In response, the State counters that Chavez-Majors' waiver was valid because in the district court "there actually [was] mention of the right to a jury trial, though not explicitly waived by the defendant." Additionally, the State notes that Chavez-Majors "received a benefit from the waiver of those jury trial rights in the form of the dismissal of four lesser counts." Considered together, the State concludes these facts "effectively informed the defendant of his right to a jury trial."

9

In addressing this issue the following standard of review applies:

> "'Whether a defendant waived the right to a jury trial is a factual question subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review.' [*State v.*] *Beaman*, 295 Kan. [853,] 858[, 286 P.3d 876 (2012)]." *Rizo*, 304 Kan. at 979.

As mentioned earlier, the facts are undisputed as to this issue so our review is de novo.

As a general rule, the Sixth Amendment to the United States Constitution and §§ 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to jury trial. *Rizo*, 304 Kan. at 979-80; *Frye*, 294 Kan. at 372. Of note, consistent with these constitutional guarantees, a Kansas statute affords a right to jury trial in felony matters. K.S.A. 22-3403(1) provides: "The defendant and prosecuting attorney, with the consent of the court, may submit the trial of any felony to the court. All other trials of felony cases shall be by jury."

Similar to other constitutional rights, "[a] criminal defendant may waive the fundamental right to a jury trial if the court and State agree to the waiver," but these waivers are "strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury." *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) (citing *Irving*, 216 Kan. at 589).

In analyzing the validity of a jury trial waiver, courts consider "whether the facts and circumstances establish that the waiver was voluntarily made by a defendant who knew and understood what he or she was doing." *Rizo*, 304 Kan. 974, Syl. ¶ 2; *Beaman*, 295 Kan. at 858. The importance of an effective waiver is shown by our well settled rule that "the deprivation of the right to a jury trial is structural error requiring reversal of the

10

defendant's conviction." *State v. Johnson*, 46 Kan. App. 2d 387, Syl. ¶ 9, 264 P.3d 1018 (2011).

Our modern-day jurisprudence relating to jury trial waivers originated with *Irving*. In *Irving*, our Supreme Court set forth the accepted procedure by which a defendant may waive the right to jury trial, stating: "[F]or a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record." 216 Kan. at 590. Our Supreme Court derived this procedure from the American Bar Association Standards for Criminal Justice. 216 Kan. at 589-90. Remarkably, in a legal landscape that seems in constant flux, Kansas courts have faithfully adhered to this simple, two-part standard from 1975 until the present day. See *Rizo*, 304 Kan. at 980; *State v. Lewis*, 301 Kan. 349, 376-77, 344 P.3d 928 (2015); *Frye*, 294 Kan. at 372.

Employing the *Irving* two-part test, Kansas appellate courts over the years have reversed criminal convictions based on a variety of inadequacies with jury trial waivers. *Frye*, 294 Kan. at 371 (district court did not inform the defendant of his right to jury trial or ascertain the validity of an ambiguous handwritten jury trial waiver); *Johnson*, 46 Kan. App. 2d at 398-00 (written stipulation by defendant that he was advised by counsel of his constitutional right to jury trial and freely, voluntarily, and intelligently agreed to waive the right was an insufficient waiver because the record did not show the district court advised the defendant of his right to jury trial); *State v. Duncan*, 44 Kan. App. 2d 1029, 1038, 1040-41, 242 P.3d 1271 (2010) (record was silent regarding whether defendant was advised of the right to jury trial by the district court and whether there was an express waiver in writing or on the record); *State v. Bowers*, 42 Kan. App. 2d 739, 740-41, 216 P.3d 715 (2009) (district court did not advise defendant of right to jury trial and attorney's request for bench trial did not waive right); *State v. Larraco*, 32 Kan. App. 2d 996, 1001-02, 93 P.3d 725 (2004) (district court did not advise defendant of right to jury trial and there was no waiver of the right in open court or in writing).

We have applied *Irving*'s two-part test to the uncontroverted facts established in the colloquy which occurred during Chavez-Majors' pretrial hearing. Regarding the first part of the test, despite the State's argument that the district court's mention that the plea agreement was, in part, "in contemplation of waiver of right to jury trial," this language is insufficient for two reasons. First, it does not satisfy *Irving*'s requirement that the court inform the defendant of the right to jury trial. As our Supreme Court has stated, "[t]he presiding judge is burdened with assuring that a defendant's rights have been adequately protected." *Frye*, 294 Kan. 364, Syl. ¶ 3. Additionally, the "defendant's waiver of a jury trial is separate and distinct from the defendant's agreement to proceed to trial before the district court on stipulated facts." *Rizo*, 304 Kan. 974, Syl. ¶ 3.

Regarding the second part of the *Irving* standard, the State candidly acknowledges that Chavez-Majors did not "explicitly" waive this constitutional right. Indeed, contrary to *Irving*'s requirement, the record does not show that Chavez-Majors waived his right to jury trial either in open court or in writing. And we will not presume a waiver of a defendant's jury trial right from a silent record. *Lewis*, 301 Kan. 349, Syl. ¶ 5.

Accordingly, we hold the district court erred in not complying with both *Irving* requirements. As a result, we conclude Chavez-Majors did not knowingly and voluntarily waive his right to jury trial in this case. The conviction is reversed, and the case is remanded with directions to afford Chavez-Majors his constitutional right to jury trial or to effect a valid waiver of jury trial.

Because we are remanding this case for further proceedings, it is necessary to resolve the second issue raised by Chavez-Majors on appeal.

Chavez-Majors asserts that the procedure used by law enforcement in this case violated constitutional search and seizure provisions of both federal and state law. In particular, Chavez-Majors makes two claims: First, he asserts that at the time Officer Burt directed EMS personnel to draw blood, there was no probable cause to believe he had been operating his motorcycle while intoxicated. Second, Chavez-Majors contends there were no exigent circumstances to justify the warrantless blood draw and, as a result, Officer Burt should have obtained a search warrant. The State disputes the two claims and contends Officer Burt had both probable cause and exigent circumstances to necessitate the warrantless blood draw to obtain incriminating evidence of intoxication.

Prior to the bench trial, Chavez-Majors filed a motion to suppress "the products of the illegal search of his bodily integrity." Citing *State v. Declerck*, 49 Kan. App. 2d 908, 317 P.3d 794 (2014), Chavez-Majors argued that Officer Burt did not have consent, probable cause, or exigent circumstances to justify ordering EMS personnel to draw blood without a search warrant. In response, the State acknowledged the precedential value of the three-part test referenced in *Declerck* to determine when a warrantless blood draw complied with Fourth Amendment guarantees. But the State argued that, unlike the facts in *Declerck*, Officer Burt had probable cause and exigent circumstances to fully meet the requirements of the three-part test.

*Evidentiary Hearing on the Motion to Suppress Evidence*

An evidentiary hearing was held on Chavez-Majors' motion to suppress evidence on June 11, 2015. The State presented two witnesses, Officer Burt and McElhone, an eyewitness to the accident. The defense presented no witnesses.

13

The evidence showed that in the evening hours of May 24, 2014, Officer Burt was patrolling the 98 miles of roadway within the 5,000 acres of El Dorado State Park. At the time, Officer Burt had been employed for six years with the Kansas Department of Wildlife, Parks, and Tourism. During his career, Officer Burt had experience with investigating traffic accidents and individuals who were driving while intoxicated.

At about 9:22 p.m., while on patrol, Officer Burt received a dispatch from Butler County Communications advising that a motorcycle accident had occurred in the park at the "rock quarry." According to Officer Burt, the rock quarry is in the Boulder Bluff area campgrounds and has a parking lot that borders the water's edge. The parking lot is about 150 feet wide and 50 feet deep. According to the officer, this area is also known as party cove because during the summertime many people went there to "party and consume alcohol and just . . . enjoy the lake."

Officer Burt arrived at the parking lot about 10 minutes after receiving the dispatch. He was the only law enforcement officer at the scene because, on this particular evening, only one other park ranger was assigned to the park and he was at the jail handling another matter. Upon arrival, Officer Burt observed 15 to 20 people partying in the parking lot and numerous alcohol containers scattered about the area.

Officer Burt first attended to Christy who was injured, sitting up, and talking but unable to provide any information regarding the accident. As he was checking on Christy's welfare, the officer saw that one of her legs had been lacerated.

Officer Burt next rendered aid to Chavez-Majors, who was lying unconscious on the parking lot. The officer described his injuries:

"The way I saw it he was pretty serious. He was unresponsive. He was laying on the ground, lots of blood in his hair and on his head, so at that point I—I got down, checked

14

to make sure he was breathing, found him to be breathing, and then just maintained that airway while waiting on emergency medical, EMS."

During this time, while Officer Burt was "right down in his face," he smelled a "strong odor" of alcoholic beverages on Chavez-Majors' breath.

Once EMS personnel arrived, Officer Burt spoke with McElhone, an eyewitness to the incident. The officer testified that McElhone told him Chavez-Majors "was driving at a high rate of speed. He heard the [motorcycle] coming; it sounded like it was traveling at a high rate of speed. And then the motorcycle laid over and came into Miss Christy standing in the parking lot, slid into her."

From Officer Burt's investigation of the roadway surface and parking lot, it appeared that Chavez-Majors' motorcycle ran off the road leading to the parking lot, traveled a short distance, was laid over on its side, and then slid 106 feet before striking Christy who was standing in the parking lot. Based on these findings, Officer Burt opined that Chavez-Majors' motorcycle was traveling at a high rate of speed prior to striking Christy and pinning her against a parked vehicle.

During the suppression hearing, Officer Burt's testimony was corroborated by McElhone who testified that Chavez-Majors had been at the park for a couple hours prior to the incident drinking beers. Before the incident, McElhone saw Chavez-Majors leave the parking lot on his motorcycle and he questioned whether Chavez-Majors was intoxicated while operating the motorcycle. McElhone volunteered, "[I]f you're drinking and you're riding a motorcycle, you know, those two just don't mix."

Later, according to McElhone, "when [Chavez-Majors] came back at a high speed I figured, you know, he might have a little trouble, and then he wrecked and that's when the incident happened." McElhone estimated the motorcycle's speed in the parking lot

15

prior to impact at "maybe 25 or more, up to 30 [miles per hour]." According to McElhone, "the motorcycle slid past me and hit the girl on the leg pinning her underneath the truck, between the truck and the motorcycle." McElhone opined that the accident happened when Chavez-Majors "was coming in at too high of speed and lost control."

EMS personnel arrived at the scene about 15 to 20 minutes after Officer Burt's arrival. Based on their medical assessment of Chavez-Majors' condition, they determined that his injuries were too serious to be treated at the local Susan B. Allen Memorial Hospital in El Dorado. As a result, the decision was made to transport him by ambulance to a hospital in Wichita.

Officer Burt testified that at the time of this accident, although he was trained in obtaining search warrants, he did not have any electronic devices to assist in the preparation of a search warrant and that it would have taken him a "significant amount of time. Hours, hour and a half, two hours" to prepare one. Given Officer Burt's assessment that Chavez-Majors had been drinking alcohol while operating his motorcycle at a high rate of speed prior to losing control, falling off the motorcycle, and striking Christy, he read the implied consent advisory to an unresponsive Chavez-Majors and then requested a blood draw from EMS personnel. After the blood was drawn, other police officers arrived to assist Officer Burt.

Upon considering the evidence, the district court found the "three part . . . test applies in this case." Applying that standard, the district court first concluded that Officer Burt had probable cause to believe that Chavez-Majors was driving while under the influence. Second, the district court found that, given Chavez-Majors' injuries which required emergency medical care, there were exigent circumstances to justify the warrantless blood draw for evidentiary purposes. Finally, the district court found that because the "defendant was unconscious, he was not inconvenienced or unreasonably impacted by the minimal bodily intrusion of a blood draw" performed by qualified EMS

16

personnel. Based on this analysis, the district court ruled that Officer Burt had probable cause with exigent circumstances to justify the warrantless search and seizure. As a result, Chavez-Majors' motion to suppress evidence was denied.

*Standard of Review*

Before analyzing the merits of this issue, it is necessary to summarize our standard of review. When reviewing a district court's decision on a motion to suppress evidence, appellate courts apply a bifurcated standard of review. First, we review the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016). Substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Of note, when reviewing factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). The second aspect of our standard of review provides that we consider de novo the ultimate legal conclusion to be drawn from the district court's factual findings. *Kennan*, 304 Kan. at 993.

*Fourth Amendment Requirements for a Constitutionally Valid Blood Draw*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect against unreasonable searches and seizures. *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010). A reasonable—and thus, constitutionally valid—search or seizure is "'one conducted pursuant to a warrant.'" *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015). Of particular significance to the case on appeal, a law enforcement officer who collects a blood sample to obtain evidence in a criminal case has executed a search and seizure subject to Fourth Amendment protections. *State v. Murry*, 271 Kan. 223, 226, 21 P.3d 528 (2001) (citing

*Schrmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 [1966]). As a result, a warrantless blood draw is considered unreasonable and invalid unless the State can show the search and seizure falls within a recognized exception to the warrant requirement.

Under the United States and Kansas Constitutions there are several exceptions to the search warrant requirement:  (1) consent; (2) search incident to lawful arrest; (3) stop and frisk; (4) probable cause to search accompanied by exigent circumstances; (5) emergency aid; (6) inventory searches; (7) plain view; and (8) administrative searches of closely regulated businesses. *Keenan*, 304 Kan. at 993 (quoting *State v. Neighbors*, 299 Kan. 234, 239, 329 P.3d 1081 [2014]).

At the outset, it is important to note that in the district court and on appeal the State does not attempt to justify the warrantless blood draw based on the exception for consent. As a result, the district court did not consider or rule on the applicability of the Kansas implied consent statutes in this case. See K.S.A. 2014 Supp. 8-1001 et seq.; *Declerck*, 49 Kan. App. 2d 908; *State v. Dawes*, No. 111,310, 2015 WL 5036690 (Kan. App. 2015) (unpublished opinion). Consequently, the relevance or applicability of any consent exception is not before us for review.

The only exception claimed by the State to justify Officer Burt's warrantless blood draw is the exception for a probable cause search with exigent circumstances. The State bears the burden of proving the lawfulness of this particular search and seizure. See *State v. Bierer*, 49 Kan. App. 2d 403, 410, 308 P.3d 10 (2013).

In *Murry*, our Supreme Court discussed *Schmerber*, the landmark Fourth Amendment United States Supreme Court opinion issued in 1966. As part of its discussion, our Supreme Court embraced *Schmerber*'s "three-part test in order to determine whether blood-alcohol evidence can be taken from a suspect without a

warrant." *Murry*, 271 Kan. at 227. As summarized by our Supreme Court, the three requirements for a constitutionally permissible blood draw by law enforcement are:

> "(1) There must be exigent circumstances in which the delay necessary to obtain a warrant would threaten the destruction of the evidence; (2) the officer must have probable cause to believe that the suspect has been driving under the influence of alcohol; and (3) the procedures used to extract the blood must be reasonable." 271 Kan. at 227.

More recently, our court referenced *Schmerber*'s three-part test in *Declerck,* 49 Kan. App. 2d at 915, although there was no opportunity to apply the test to the particular facts of that driving under the influence (DUI) case because the State attempted to justify the blood draw under the implied consent exception of K.S.A. 2011 Supp. 8-1001(b)(2), and essentially conceded the inapplicability of the probable cause with exigent circumstances exception.

Similarly, in *Dawes*, an unpublished DUI case factually analogous to this one, the legal question presented was whether the officer's blood draw was permissible under the implied consent exception. *Dawes*, 2015 WL 5036690, at *2. Because the district court specifically declined to consider the probable cause with exigent circumstances exception but based its ruling on the implied consent statute, K.S.A. 2012 Supp. 8-1001, our court had no reason to apply *Schmerber*'s three-part test. *Dawes*, 2015 WL 5036690, at *5.

*Application of the* Schmerber *Three-Part Test*

The case on appeal, however, requires us to apply the *Schmerber* three-part test to determine if the district court was correct in ruling that the warrantless blood draw ordered by Officer Burt was constitutionally permissible under the probable cause with exigent circumstances exception.

19

Preliminarily, Chavez-Majors candidly concedes that in the district court he did not challenge the third requirement of the *Schmerber* test—that the procedure used to extract the blood must be reasonable. As a consequence, on appeal Chavez-Majors only challenges the district court's findings with regard to the first two requirements of the *Schmerber* test. Accordingly, we will not review the reasonableness of the blood draw procedure used in this case.

For the sake of completeness, however, we note the district judge found the procedure used to withdraw blood from Chavez-Majors was reasonable under the circumstances:

> "The Court further will note that the [EMS] did the blood draw in this case which was ostensibly done by qualified personnel, and I don't think this is really being disputed. But the defendant was unconscious, he was not inconvenienced or unreasonably impacted by the minimal bodily intrusion of a blood draw."

Under these circumstances, we will confine our review on appeal to the first two requirements of the *Schmerber* test, which we will consider in reverse order.

1. *Probable Cause Belief of Driving Under the Influence of Alcohol*

At the suppression hearing, the district court made the following findings regarding the factual basis for Officer Burt's probable cause belief that Chavez-Majors had committed the crime of DUI:

> "The Court does find that the officer in this case would have had the following information available in making his decision . . . . In this instance the officer would have had available, based on the evidence, the following information:  that the—defendant in this case was operating his motorcycle at a high rate of speed for a parking lot, 25 to 30 miles per hour, which at least suggests to the Court impaired judgment; No. 2, that the defendant's driving behavior resulted in a motorcycle hitting a pedestrian which resulted

20

in serious injury to such pedestrian and to the defendant. The officer would have also had the information that he had detected the strong smell consistent with alcoholic beverage on the breath of the defendant. And the officer also would have known that the particular place where this incident took place was known as a party cove . . . based on his experience which involved alcohol drinking parties and was busy with alcohol parties in this very area on that very day."

Based on these facts, the district court concluded that Officer Burt had probable cause to believe that Chavez-Majors had operated his motorcycle while intoxicated.

On appeal, while conceding that Officer Burt testified that Chavez-Majors had a strong odor of alcohol on his breath, Chavez-Majors highlights the officer's concession that this odor "was not necessarily an indication of [his] intoxication or that he was intoxicated at all." Moreover, while noting the evidence of excessive speed under the circumstances, Chavez-Majors argues that "traffic infractions and poor decision-making do not necessarily mean intoxication."

The State responds by highlighting the district court's factual findings and concluding, "[T]he information the officer had available to him regarding the location of the accident, the nature of the accident, and the strong odor of alcohol emanating from the defendant's breath gave him probable cause that [Chavez-Majors] was [DUI]."

In *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012), our Supreme Court summarized the meaning of probable cause:

"'Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstances tests, there is no

21

rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.' [Citations omitted.]"

In particular, *Sloop*, 296 Kan. at 21, also clarified the quantum of proof necessary to establish probable cause by quoting the United States Supreme Court case, *Draper v. United States*, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959):

"Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162 (1925)."

Upon our independent review of the suppression hearing transcript, we conclude there was substantial competent evidence to support the district court's factual findings and its legal conclusion that Officer Burt had probable cause to believe that Chavez-Majors committed the crime of DUI (if not aggravated battery while DUI).

First, as detailed earlier, there was uncontroverted evidence that Chavez-Majors had a strong odor of alcohol on his breath which Officer Burt noticed while maintaining Chavez-Majors' airway minutes after the accident. It is understatement to observe that our appellate opinions relating to DUI routinely mention the odor of alcohol on a driver's breath as an indicator of alcohol consumption and possible intoxication. In the present case, it is significant that during the summertime the party cove parking lot was well known for groups of people consuming alcoholic beverages while partying. On this occasion, at the time of Officer Burt's arrival, there were numerous people partying with containers of alcohol scattered about the parking lot.

Second, as our Supreme Court has observed, "[o]bviously, evidence of unsafe driving can suggest intoxication." *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d

22

1275 (2015). Officer Burt's investigation of the scene, corroborated by McElhone's eyewitness account, showed that Chavez-Majors operated his motorcycle at a high rate of speed while entering the party cove parking lot which was only 150 feet wide and 50 feet deep. After traveling off the road leading to the parking lot, Chavez-Majors lost control of his motorcycle which then was laid down on its side, sliding 106 feet before striking and seriously injuring Christy. Based on these facts, Officer Burt concluded that Chavez-Majors was operating his motorcycle at a high rate of speed prior to losing control.

In this regard, McElhone's eyewitness account of Chavez-Majors' operating his motorcycle at a high rate of speed and losing control in a parking lot with numerous people standing about provided valuable information for Officer Burt's investigation and corroborated the officer's on-scene findings. See *Keenan*, 304 Kan. at 994-95 (quoting *State v. Slater*, 267 Kan. 694, 703, 986 P.2d 1038 [1999], in part: "'An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant.'" and stating: "These observations combined with the detailed tip from [the] identified informant . . . supplied substantial competent evidence to support probable cause to arrest Keenan for DUI.").

Having reviewed the totality of circumstances which consisted of Officer Burt smelling a strong odor of alcoholic beverages on Chavez-Majors' breath; McElhone's eyewitness report that Chavez-Majors operated his motorcycle at a high rate of speed when entering the parking lot which caused the defendant to lose control and fall off his motorcycle; the corroboration of McElhone's account by Officer Burt's personal investigation of the accident scene; and Officer Burt's knowledge that the accident occurred in the parking lot of party cove where numerous partiers were drinking alcoholic beverages, the facts and circumstances within Officer Burt's knowledge, and of which the officer had reasonable trustworthy information, were sufficient to warrant a person of reasonable caution to believe that Chavez-Majors had committed the offense of

23

DUI or aggravated battery while DUI. See 296 Kan. at 21. In short, we are convinced that Officer Burt had probable cause to believe that Chavez-Majors had committed a crime.

## 2. *Exigent Circumstances*

The district court made the following findings regarding the second requirement of the *Schmerber* test—exigent circumstances in which the delay necessary to obtain a warrant would threaten the destruction of evidence:

> "Regarding the issue of exigent circumstances, the Court, based on the evidence, finds that the defendant in this case had been significantly injured as a result of this motorcycle accident, and there's evidence that his head was bleeding profusely at the time. The Court finds that under the circumstances of this case obtaining a search warrant in short order was not logistically feasible given the apparent need for immediate medical care on an emergency basis and the likely need for evacuation of at least two individuals. And the Court also takes into account, though not determinative in and of itself, the limited resources that were immediately available to the officer on this occasion and determines that there was sufficient showing in this case of exigent circumstances."

On appeal, Chavez-Majors challenges the district court's findings of exigency justifying a warrantless blood draw. But his arguments are bereft of legal authority and facts in support. For example, Chavez-Majors asserts, without any factual basis, that his blood could have been drawn more than three hours after the incident "and [he] could have been charged with DUI based on the testing of that blood." Moreover, Chavez-Majors challenges the district court's conclusion that Officer Burt had limited resources to obtain a search warrant under the circumstances. On the contrary, Chavez-Majors claims "[i]t makes no difference that [Officer] Burt did not have the gadgets to simplify the process. He could have, and should have, done things correctly with the resources he had available to him."

24

In response, the State cites *Missouri v. McNeeley*, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), for the proposition that, although the natural metabolization of alcohol in the bloodstream does not present a per se exigency justifying a warrantless blood draw, it is a factor to be considered based on the totality of circumstances in each individual case. The State also argues that given the severity of the injuries to Chavez-Majors and Christy, and the lack of resources available to Officer Burt, the case facts mirror *Schmerber* and support the district court's finding of exigency in this case.

There is limited Kansas caselaw applying *Schmerber*'s exigent circumstances requirement in cases, similar to this one, where an officer orders a warrantless blood draw on an unconscious, seriously injured operator of a motor vehicle based on probable cause of DUI.

In *Murry*, our Supreme Court was presented with a case involving a driver suspected of DUI who was involved in a serious one-vehicle accident. The driver was extricated from his vehicle, taken to a nearby hospital, and did not consent to the officer's request for a warrantless blood draw which was performed by hospital personnel. In a later DUI prosecution, the district court suppressed evidence of the blood draw because Murry was not under arrest prior to the blood draw.

On appeal, our Supreme Court emphasized that "[d]espite statutory language authorizing the taking of the blood sample, any such bodily invasion must still be constitutionally sound. The Fourth Amendment is implicated when blood samples are drawn from the body." 271 Kan. at 226. The central legal issue addressed was whether an individual must be under arrest prior to the blood draw. Of importance to our case on appeal, however, the Supreme Court concluded that the Fourth Amendment is not violated when a blood sample is taken prior to arrest *provided the Schmerber three-part requirements are met*. *Murry*, 271 Kan. at 233.

25

With that primary legal issue resolved, our Supreme Court summarily applied the *Schmerber* test and without discussion concluded:

> "All three requirements have been met in this case. First, there were exigent circumstances which justified the taking of the blood sample. Second, [the officer] had probable cause to believe that Murry had been [DUI]. This point has never been controverted. Third, the procedure used to extract the blood was reasonable." *Murry*, 271 Kan. at 233.

While our Supreme Court in *Murry* did not explain its rationale for finding exigent circumstances, it is noteworthy that the reason it approved the warrantless blood draw without an arrest was "because of the exigency created by the evanescent nature of blood alcohol and the danger that important evidence would disappear without an immediate search." 271 Kan. 223, Syl. ¶ 2. In this way, *Murry* provides some legal authority that the natural metabolism of alcohol in blood is a relevant factor in determining whether there are exigent circumstances in a particular DUI accident case.

Fifteen years later, in *Keenan*, our Supreme Court, on a petition for review, considered a case involving a warrantless entry into a residence based on probable cause of DUI with exigent circumstances. Our Supreme Court acknowledged the Court of Appeals opinion which "noted that Kansas had little authority on whether the potential for increase or dissipation of alcohol in a suspect's blood constituted exigent circumstances." 304 Kan. at 991. The Supreme Court noted, however, the panel's ultimate conclusion that the facts "demonstrated a potential for loss of evidence that was serious enough to qualify as an exigent circumstance justifying the officers' entry into Keenan's home." 304 Kan. at 992.

In its opinion, our Supreme Court advised that

> "when Keenan's petition for review was granted, this court anticipated that this case
> would provide an opportunity to fill in the blanks the Court of Appeals noted in Kansas
> law on the exigencies that may arise because of the changeable nature of blood-alcohol
> evidence in DUI prosecutions. But, on closer examination, we have determined that this
> case cannot bear the weight intended for it." 304 Kan. at 995.

Instead, the Supreme Court held that "even if the entry was illegal, any error by the
district judge was harmless." 304 Kan. at 996. As a result, our Supreme Court did not
apply the *Schmerber* three-part test.

While there is limited Kansas caselaw clarifying the meaning of exigent
circumstances and applying them in warrantless blood draw DUI cases, the United States
Supreme Court has provided helpful guidance.

In *Schmerber*, the defendant was injured in a motor vehicle accident, taken to a
hospital, and blood was drawn at the request of law enforcement officers without a search
warrant or the driver's consent. The blood evidence revealed that Schmerber was DUI at
the time of the accident. The lower courts rejected Schmerber's claim that his Fourth
Amendment rights were violated by this procedure. Ultimately, the United State Supreme
Court reviewed the case and specifically addressed the exigent circumstances issue:

> "The officer in the present case, however, might reasonably have believed that he
> was confronted with an emergency, in which the delay necessary to obtain a warrant,
> under the circumstances, threatened 'the destruction of evidence.' We are told that *the*
> *percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the*
> *body functions to eliminate it from the system. Particularly in a case such as this, where*
> *time had to be taken to bring the accused to a hospital and to investigate the scene of the*
> *accident, there was no time to seek out a magistrate and secure a warrant*. [Citation
> omitted.]" (Emphasis added.) 384 U.S. at 770-71.

27

Of special note, the italicized portion of this quote from *Schmerber* was cited in *Murry*, 271 Kan. at 226, and *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1560.

Forty-seven years after the *Schmerber* opinion was issued, the United States Supreme Court revisited it in *McNeely*, 569 U.S. 141. In *McNeely*, an officer stopped the defendant who was driving his truck over the posted speed limit and across the centerline. After the stop, the officer noticed typical signs of alcohol intoxication, McNeely admitted to drinking a couple of beers, performed poorly on field sobriety tests, and declined a preliminary breath test. After his arrest for DUI, McNeely indicated he would again refuse to take a breath test whereupon the officer transported him to a nearby hospital for a blood draw. Upon McNeely's refusal to consent at the hospital, the officer ordered a blood draw without attempting to obtain a search warrant. Subsequent laboratory testing revealed a blood-alcohol level almost twice the permissible legal limit.

The trial court suppressed the evidence finding that, as in all intoxication cases, although McNeely's blood alcohol was being metabolized in his liver, there was no evidence the officer faced an emergency which prevented him from practicably obtaining a search warrant. 569 U.S. at ___, 133 S. Ct. at 1557. The Missouri Supreme Court affirmed the suppression observing, "*Schmerber* directs lower courts to engage in a totality of the circumstances analysis when determining whether exigency permits a nonconsensual, warrantless blood draw." *State v. McNeely*, 358 S.W.3d 65, 74 (2012).

Moreover, as highlighted by the United States Supreme Court in its opinion, the Missouri Supreme Court

> "concluded that *Schmerber* 'requires more than the mere dissipation of blood-alcohol evidence to support a warrantless blood draw in an alcohol-related case.' According to the court, exigency depends heavily on the existence of additional 'special facts' such as whether an officer was delayed by the need to investigate an accident and transport an

28

injured suspect to the hospital, as had been the case in *Schmerber*. [Citations omitted.]" *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1557.

In *McNeely,* none of the special facts described by the Missouri Supreme Court were present in that typical DUI traffic stop case.

The United States Supreme Court, in *McNeely* "granted certiorari to resolve a split of authority on the question whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *McNeeley*, 569 U.S. at ___, 133 S. Ct. at 1558.

A majority of the Supreme Court found the natural dissipation of alcohol by itself did not categorically create exigency. 569 U.S. at ___, 133 S. Ct. at 1563. Nevertheless, the Supreme Court acknowledged that a person's blood-alcohol level declines shortly after that person stops drinking, and "a significant delay in testing will negatively affect the probative value of the results." 569 U.S. at ___, 133 S. Ct. at 1561.

The Supreme Court also recognized in *McNeely* that in some circumstances "further delay in order to secure a warrant after the time spent *investigating the scene of [an] accident and transporting the injured suspect to [a] hospital to receive treatment* [could threaten] the destruction of evidence." (Emphasis added.) 569 U.S. at ___, 133 S. Ct. at 1561 (citing *Schmerber*, 384 U.S. at 770-71). The Supreme Court concluded that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . [w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." 569 U.S. at ___, 133 S. Ct. at 1563.

29

Importantly, in *McNeely*, given the circumstances of an ordinary DUI car stop, the State argued for a per se rule and did not contend there were additional exigent factors to justify a warrantless blood draw. As a consequence, the Supreme Court determined that it did not have an adequate framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant. 569 U.S. at ___, 133 S. Ct. at 1567-68.

Recognizing these limitations in precedent, when considered together, *Schmerber, McNeely,* and *Murry* still provide helpful guidance in addressing whether the totality of circumstances confronting Officer Burt justified his decision to order a warrantless blood draw in this case.

First, read together, *Schmerber, McNeely*, and *Murry* establish that while the metabolization of alcohol in the bloodstream with the resulting loss of evidence is not a per se exigency that qualifies as an exception to the Fourth Amendment's search warrant requirement, in the determination of whether a search warrant was required prior to obtaining a blood draw, metabolization of alcohol is a factor which may be considered among other exigent factors in the totality of circumstances in a particular case. Given Officer Burt's belief that there was probable cause to believe Chavez-Majors was driving under the influence, the metabolization of alcohol in his blood meant that evidence of intoxication would diminish over time. As a result, time was of the essence to prevent the destruction of that evidence.

Second, similar to *Schmerber* and *Murry*, and unlike the typical DUI car stop case where the officer stops the suspect and promptly conducts a DUI investigation, this case involved a motor vehicle accident which resulted in two individuals being seriously injured. Obviously, the nature of a law enforcement officer's duty to render aid to seriously injured persons is an exigent factor which is time-consuming. In this case, Officer Burt was dispatched to the party cove parking lot upon the report of a motor

30

vehicle accident. Ten minutes elapsed before his arrival. He was the only officer at the accident scene for about 20 minutes. After his arrival, the officer maintained Chavez-Majors' airway and attended to Christy while awaiting EMS personnel who arrived about 15 to 20 minutes after Officer Burt. Unquestionably, Officer Burt's duty to render aid to Chavez-Majors and attend to Christy took precedence over his responsibility to conduct a DUI accident investigation. Equally apparent, as a result of Officer Burt's delay in arriving at the scene and caring for two injured persons, about 25 to 30 minutes of alcohol metabolization in Chavez-Majors' body had already elapsed before the officer would have had an opportunity to begin preparation of a search warrant.

Third, akin to *Schmerber* and *Murry*, the emergency medical care and transportation of Chavez-Majors to a hospital is another exigent factor. Yet, unlike *Schmerber* and *Murry*, this circumstance was more time consuming because the EMS personnel determined that Chavez-Majors' injuries were so severe that he was not going to be transported by ambulance to the local hospital in El Dorado, located in Butler County, but to a hospital in Wichita, located in Sedgwick County. Thus, Officer Burt was presented with a difficult choice. If blood was not drawn promptly at the accident scene by EMS personnel, Chavez-Majors was going to be transported a considerable distance to another jurisdiction with an out-of-county hospital, and there was the potential need for assistance from another law enforcement agency in obtaining, facilitating, or executing a search warrant for the blood draw. As a result, Officer Burt was confronted with a time-consuming, unfamiliar, and involved process if he opted to seek a search warrant. By comparison, the circumstances relating to the emergency medical care, which the United States Supreme Court in *Schmerber* and our Supreme Court in *Murry* analyzed and found to be exigent, were much less pressing than those which confronted Officer Burt.

Fourth, analogous to but more demanding than in *Schmerber* and *Murry*, Officer Burt was tasked with single-handedly conducting the initial investigation of an accident scene that was complicated by not only attending to two seriously injured individuals, but

31

also by being required to inspect the roadway and parking lot in an effort to reconstruct the accident, obtain basic witness information, and preserve the integrity of the accident scene in the midst of a crowd of partiers consuming alcoholic beverages. It is undisputed that Officer Burt was the only officer at the scene until the blood was drawn by EMS personnel. Given the multiple important duties and responsibilities placed upon a lone park ranger on this occasion, it is reasonable to conclude that Officer Burt would not have had the time and opportunity to additionally prepare and obtain a search warrant for the blood draw.

Finally, in addition to these delays, Officer Burt testified that, although he was trained in obtaining search warrants, he did not have any electronic devices to facilitate the preparation of a search warrant. See K.S.A. 2014 Supp. 22-2502(a) (providing for electronic communication of information related to search warrants). The officer estimated that under the circumstances it would have taken him a "significant amount of time. Hours, hour and a half, two hours" to prepare a search warrant. Of note, apart from this estimated preparation time, there was no evidence presented regarding the delay, if any, to obtain judicial review and approval of the search warrant. While we reject any bright-line time period for which a necessary delay to prepare a search warrant justifies a warrantless blood draw, under the totality of circumstances in this case, the estimated delay of an additional hour-and-a-half to two hours to prepare a search warrant is an exigent factor given that over time the natural dissipation of alcohol would have adversely affected the probative value of this evidence.

In summary, we have compared the exigent factors in *Schmerber* and *Murry*—which resulted in judicial findings of exigent circumstances—to the unique facts presented by this case on appeal. Under the totality of circumstances, the metabolization of alcohol in the defendant's bloodstream coupled with the exigent factors that the officer arrived at the accident scene 10 minutes after being dispatched; upon arrival he was the only officer available to attend to the seriously injured defendant and another injured

person for 15 to 20 minutes while awaiting the arrival of emergency medical personnel; emergency medical personnel determined it was necessary to transport the defendant by ambulance a considerable distance to a hospital in another county for medical treatment; the officer conducted an investigation of the accident scene; and the officer testified that it would have taken "a significant amount of time," estimated at one and a half to two hours to prepare a search warrant; there were exigent circumstances to justify a warrantless blood draw because the delay necessary to obtain a search warrant would have threatened the destruction of blood-alcohol evidence. In short, we find the district court's legal conclusion that probable cause with exigent circumstances justified the warrantless blood draw was proper and supported by substantial competent evidence.

The district court's ruling denying Chavez-Majors' motion to suppress evidence of the blood draw is affirmed. Chavez-Majors' conviction for aggravated battery while DUI is reversed, and the case is remanded to the district court with directions.

Affirmed in part, reversed in part, and remanded with directions.