NOT DESIGNATED FOR PUBLICATION

No. 118,368

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY TAYLOR HEFELE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES E. PHELAN, judge. Opinion filed August 31, 2018.
Affirmed in part, reversed in part, and remanded with directions.

*Jean Ann Uvodich*, of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., GREEN and HILL, JJ.


PER CURIAM: Following a bench trial, Zachary Taylor Hefele was convicted of
misdemeanor domestic battery and misdemeanor criminal restraint. Hefele appeals those
convictions, arguing that the evidence was insufficient to sustain these convictions. We
determine that the evidence was sufficient to support Hefele's criminal restraint
conviction. Finding merit in his insufficient evidence argument concerning his domestic
battery conviction, we reverse the domestic battery conviction. Nevertheless, we
conclude that the evidence concerning the domestic battery conviction was sufficient to

1

sustain a conviction for simple battery, which is a lesser included offense of domestic battery. Thus, we remand to the trial court with directions to convict and sentence Hefele for simple battery. Accordingly, we affirm in part, reverse in part, and remand with directions.

On June 6, 2017, the State charged Hefele with one count of domestic battery, a class B person misdemeanor in violation of K.S.A. 2016 Supp. 21-5414(a)(2), and criminal restraint, a class A person misdemeanor in violation of K.S.A. 2016 Supp. 21-5411(a). The State's charges stemmed from an argument between Hefele and his then-girlfriend, Kasey Fuchs. The argument occurred in a townhome shared by Hefele and Fuchs. The police arrived at the townhome after Fuchs called her mother during the argument, and her mother called the police.

Hefele's case proceeded to a bench trial. At the bench trial, the two police officers who responded to the argument—Officer Scott Hacker and Officer Todd Boyer—and Fuchs testified on behalf of the State. Hefele testified on his own behalf.

Officer Hacker testified that on June 5, 2017, at about 5:45 a.m., he responded to a reported call about a physical disturbance at the townhome where he later learned Hefele and Fuchs resided. Officer Hacker explained that after arriving at the scene, he asked Hefele what had happened. According to Officer Hacker, Hefele stated that he and Fuchs had been arguing all morning and that during the argument, Fuchs had been "throwing around some of his property" and had been upset. Officer Hacker asserted that Hefele had told him Fuchs wanted to leave their townhome, but "he had prevented her from doing so" for about 20 to 30 minutes by "bracing himself against the doorjamb." He also asserted that Hefele had told him that at one point, he "grabbed [Fuchs] in a bear hug" and pushed her onto the bed. He further testified that Hefele had scratches on his face and arm, which Hefele told him Fuchs had caused when he was "attempt[ing] to restrain her."

2

He asserted that Hefele never mentioned anything about Fuchs taking or trying to take medication.

According to Officer Boyer, Fuchs told him that Hefele had "position[ed himself] on top of her and, . . . appl[ied] his hands towards her throat or near her throat," strangling her. She further told him that Hefele picked her up in "a tucked position with her arms, . . . holding her knees to her chest [and] threw her onto the bed." She also told him that Hefele had "block[ed] her" from leaving the townhome. Officer Boyer testified that Fuchs never mentioned anything about attempting suicide.

Fuchs testified that she suffered from depression. Fuchs explained that she took regular prescription medication for her depression. She stated that she was currently taking Alprazolam. Fuchs admitted that she had previously threatened to kill herself. She also suggested that she had tried to commit suicide previously. She asserted that Hefele was aware of her history with attempted suicide.

Concerning her and Hefele's argument on the morning of June 5, 2017, Fuchs testified that she and Hefele argued for two to three hours at their townhome. She had been upset with Hefele because he had logged into her Facebook account without her permission. She was also very upset because one of her close friends had just committed suicide. She explained that during the altercation, the following happened:

> "And I was getting all depressed about that, and I didn't want to really hear any type of arguing from anybody. And we kind of got into an argument.
> "And just kind of lost my crap and tried killing myself, and he tried taking the pills from me. And I had called my parents, crying, because I was, like, depressed about it, and I hadn't told them about my friend yet.
> "And, um, they kind of freaked out and called the police and police came."

3

Fuchs testified that during the argument, when Hefele tried to "pack his stuff and leave," she "threaten[ed] to kill [herself]." She explained that she had swallowed "a decent amount of [her] pills" and she was still trying to take more. She testified that Hefele intervened because of her "issues with that in the past." She further explained that Hefele "technically" put her in a "bear hug" so he could grab the "couple of" pills in her mouth and the remaining pills from her hands. She insisted that Hefele touched her only to grab the pills out of her mouth and hand "so [she] couldn't take any more of [them]." Fuchs explained that she later became concerned that she swallowed so many pills that she may need her stomach pumped. She also admitted that she had consumed alcohol that morning even though she knew she was not supposed to mix her pills with alcohol.

Concerning whether Hefele prevented her from leaving their townhome, Fuchs stated that she never tried to leave the townhome during the argument. It was actually Hefele who wanted to "leave [her]," and she was trying to get him to stay.

Fuchs stated that she could remember only a little after the police arrived. She asserted that she was "super dizzy from taking all that medication," as well as in "a panicked mood from everything." When asked about whether she told Officer Boyer about the medication she had taken that morning, Fuchs testified that she did not think she said anything because her father had arrived and was "standing right there" when she was being questioned. She stated that she "didn't want [her] parents knowing about [her suicide attempt], because the previous time that it happened, it caused kind of a whole family issue." She asserted that "a lot of" what was in her written statement to the police was not accurate.

Furthermore, on cross-examination, Fuchs admitted that the day after the altercation, she wrote a new statement for the victim assistance office of the police department in which she explained how the day prior she had attempted suicide. In this

4

statement, she also admitted that she had "lied to the [p]olice because [she] didn't want [her] Father to know what [had] happened." This statement was admitted into evidence.

On redirect examination, Fuchs testified that she did not consider her and Hefele to still be in a dating relationship following the June 5, 2017 altercation. She stated that they did get back together at some point when they were allowed "electronic contact," but they have since broken up.

Hefele testified that on June 5, 2017, he and Fuchs began fighting about Facebook. He asserted that Fuchs "had already been kind of distraught about the . . . passing of her friend. So, little incidents became big incidents really quick." Hefele alleged that during the fight, Fuchs took her depression medication with alcohol. Hefele testified that Fuchs threatened to harm herself many times. He alleged that throughout the argument, Fuchs became more and more upset, and then Fuchs "started rushing around and grabbing things here and there, trying to [commit suicide] in front of [him]."

Hefele testified that he tried to keep Fuchs from taking any further medication that night. He explained he left their townhome to smoke a cigarette after he learned that Fuchs' mother had called the police; Fuchs had placed the call on speaker phone. Despite Officer Hacker's testimony that he never mentioned Fuchs' attempted suicide, Hefele insisted that he told Officer Hacker about Fuchs' attempt. He also insisted that he told Officer Hacker to take photos of the alcohol and medication that was still on the floor of their townhome.

The trial court found Hefele guilty of both domestic battery and criminal restraint. For each conviction, the trial court sentenced Hefele to 12 months' misdemeanor probation, with an underlying jail sentence of 90 days. The trial court ran Hefele's sentences concurrently.

5

*Were Hefele's Convictions Supported by Sufficient Evidence?*

On appeal, Hefele challenges whether there was sufficient evidence to support his domestic battery and criminal restraint convictions. Hefele's argument about the sufficiency of the evidence supporting his domestic battery conviction has three parts. First, he argues that he could not have committed the crime because he was acting in defense of Fuchs as meant under K.S.A. 2017 Supp. 21-5222(a). Second, he argues that insufficient evidence established that he acted in a rude, insulting, or angry manner as required to commit domestic battery. Third, he argues that insufficient evidence established that he was at least 18 years old as required to commit domestic battery under the theory for which he was charged. Concerning his criminal restraint conviction, Hefele emphasizes Fuchs' testimony that he did not restrain her during the morning of June 5, 2017.

The State responds that sufficient evidence supported Hefele's domestic battery and criminal restraint convictions. Regarding Hefele's domestic battery conviction, the State argues that Hefele could not properly argue defense of others under the facts of his case. It then argues that in the light most favorable to the State, sufficient evidence established that Hefele touched Fuchs in a rude, insulting, or angry manner. Finally, the State argues that based on the fact Hefele smoked a cigarette and lived in a townhome, sufficient evidence established that Hefele was 18 years old. In the alternative to this final argument, the State asserts that caselaw supports that this court should remand to the trial court to resentence Hefele for simple battery because simple battery is a lesser included offense of domestic battery which lacks the age element. Regarding Hefele's criminal restraint conviction, the State emphasizes Officer Hacker's testimony that Hefele told him that he had prevented Fuchs from leaving the townhome.

6

*Standard of Review*

The standard for reviewing the sufficiency of the evidence following a jury trial and a bench trial is the same. An appellate court "reviews sufficiency of the evidence claims by looking at *all the evidence* in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." (Emphasis added.) *State v. Frye,* 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). While engaging in this review, this court does not "'reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citation omitted.]'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). Moreover, appellate courts assume that the trial court "possessed sufficient intelligence and expertise to rely on a legally adequate theory." *State v. Stuber*, 27 Kan. App. 2d 160, 175, 1 P.3d 333 (2000).

To the extent that Hefele's argument involves statutory interpretation, interpretation of a statute is a question of law over which this court has unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*Domestic Battery Conviction*

Turning to Hefele's domestic battery conviction, we consider whether sufficient evidence existed to support his conviction. Hefele was charged and convicted of committing domestic battery under K.S.A. 2017 Supp. 21-5414(a)(2). Moreover, the complaint Hefele was charged under explicitly stated that Hefele and Fuchs were "family or household members." Accordingly, to uphold Hefele's domestic battery conviction, the evidence must support that Hefele "knowingly caus[ed] physical contact with . . . a family or household member, when done in a rude, insulting or angry manner" when considering all the evidence in the light most favorable to the State. See K.S.A. 2017 Supp. 21-5414(a)(2).

7

*Defense of Others Inapplicable*

Hefele first argues that insufficient evidence supports his domestic battery conviction because he touched Fuchs while acting in her defense. In support of this argument, Hefele cites K.S.A. 2017 Supp. 21-5222(a)—the combined self-defense and defense of others statute, which states:

> "*A person* is justified in the use of force *against another* when and to the extent it appears to *such person* and *such person* reasonably believes that such use of force is necessary to defend *such person* or *a third person* against *such other's imminent use of unlawful force*." (Emphasis added.)

Hefele argues that because "Fuchs was facing imminent death or great bodily harm," he could place Fuchs in a bear hug and grab her pills to "defend [her] from committing suicide." The State argues that the plain language of K.S.A. 2017 Supp. 21-5222(a) establishes that this provision does not apply under the facts here.

Although neither party has cited the case, a Montana Supreme Court case, *State v. King*, 370 Mont. 277, 284, 304 P.3d 1 (2013), supports the State's interpretation of K.S.A. 2017 Supp. 21-5222(a). In *King*, King relied on the Montana combined self-defense and defense of others statute, arguing that Montana could not prosecute him because he was preventing the victim from committing suicide. Significantly, the Montana statute is substantively identical to our Kansas statute. See 370 Mont. at 283-84. The Montana Supreme Court rejected King's argument for the following reasons:

> "[A] logical interpretation of [Montana's self-defense and defense of others statute], is that justifiable use of force in defense of another involves three parties: the defendant, the person being defended, and the aggressor. There is nothing in the plain language of the

8

statute, nor any authority provided to this Court, to suggest that the defense applies to a situation involving only two people." *King*, 370 Mont. at 286.

In this case, based on the plain language of K.S.A. 2017 Supp. 21-5222(a), the defense applies when a person invokes it "to defend . . . a third person against such other's imminent use of unlawful force." Thus, like the Montana statute, "the defense of another involves three parties" because it applies when one person defends another person from an entirely different person. Consequently, Hefele's argument that his domestic battery conviction must be reversed because he had immunity under the defense of others statute is incorrect.

Moreover, about one-third of the states, including neighboring Missouri, have "authority to prevent suicide" statutes. See 2 Robinson, Criminal Law Defenses § 146(c)(2) n.6 (1984). These statutes are defense statutes just like the combined self-defense and defense of others statute. Persons invoking an authority to prevent suicide defense may use limited, reasonable force when required to prevent others from seriously injuring or killing themselves. Kansas' lack of "authority to prevent suicide" statute supports that Hefele's proposed defense is not statutorily recognized in this state.

*Rude, Insulting, or Angry Manner—Sufficient Evidence*

Hefele's second argument is that because his physical contact with Fuchs resulted from his desire to prevent her from committing suicide, the contact could not be rude, insulting, or angry as required to commit domestic battery. The State emphasizes the type of physical contact that Hefele made.

It is undisputed that Hefele and Fuchs were arguing for at least a few hours during the morning of June 5, 2017, when the physical contact occurred. Officer Hacker's, Fuchs', and Hefele's testimony supported that Hefele placed Fuchs in a bear hug and

9

grabbed pills away from her. Officer Boyer testified that Fuchs told him that Hefele had strangled her. Officer Hacker testified about the marks on Hefele's face and arms resulting from his physical contact with Fuchs.

Although Hefele asserts that he made physical contact with Fuchs to prevent her from attempting suicide, our standard of review requires us to consider all the evidence in the light most favorable to the State without reweighing the evidence, resolving evidentiary conflicts, or making determinations about witness credibility. *Dunn*, 304 Kan. at 822. Accordingly, this court cannot consider Hefele's and Fuchs' trial testimony standing alone. When considering the preceding evidence in the light most favorable to the State, a rational fact-finder could find that Hefele made contact with Fuchs in a rude, angry, or insulting manner.

### *Hefele Aged 18 or Older—Insufficient Evidence*

As previously discussed, Hefele's complaint stated that he and Fuchs were "family or household members." K.S.A. 2017 Supp. 21-5414(e)(2) states "'family or household member' means persons *18 years of age or older* who are . . . persons who are presently residing together or who have resided together in the past." (Emphasis added.) As a result, for his conviction to stand, sufficient evidence must support that he was at least 18 years old on June 5, 2017.

Hefele's third argument is that insufficient evidence supports this element. The State responds that sufficient evidence established that Hefele was at least 18 years old for the following reasons: (1) because the trial court could view Hefele's appearance and demeanor; (2) because Hefele testified about smoking a cigarette; and (3) because Hefele testified about living in a townhome with Fuchs. Accordingly, the State argues that circumstantial evidence supports this element.

10

In its brief, the State contends that there is split authority within this court about whether fact-finders can determine a person's age by observation. It then asks this court to rely on the cases supporting that fact-finders can rely on observations. Yet, there is no split authority within our court.

In *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582, 203 P.3d 735 (2009), this court held: "A jury simply cannot speculate or infer through its own observations or personal knowledge that an element of a crime has been proven. The State must put on evidence, circumstantial or direct, that establishes every element necessary to sustain a guilty verdict." The *Perez-Rivera* court stressed that "a presumption may not be based upon a presumption or an inference upon an inference." 41 Kan. App. 2d at 582. This is because fact-finders cannot stack presumptions. Hence, the *Perez-Rivera* court rejected the State's argument that sufficient evidence supported Perez-Rivera's convictions because the jury could infer the alleged domestic battery victim's age by observation and her Nevada marriage. The jury would have to speculate about the victim's age based on observation and would have to have personal knowledge about Nevada's legal age to marry. Thus, the only evidence presented to the jury was an inference upon an inference. 41 Kan. App. 2d at 582-83.

The State contends that the case *State v. Johnson*, No. 104,595, 2012 WL 686702 (Kan. App. 2012) (unpublished opinion), supports that fact-finders can determine a person's age, when that is an element of the crime, based on observation. But the *Johnson* court explicitly found that the victims were over 16 years old because "*in conjunction with the jury's observations* of L.E.B. and G.A.D. who were 41 and 37 respectively at the time of trial, testimony of L.E.B. established that she drove her car to work, she worked for AT & T and had worked there for a long time, and she had cashed a lottery ticket and held the $500 winnings in her purse." (Emphasis added.) 2012 WL 686702, at *3. Thus, under the facts in *Johnson*, there was not an inference upon an inference. Instead, in addition to the fact the jury could observe the victims, actual circumstantial evidence

11

supported that the victims were over 16 years old. For example, it was unlikely that a 16-year-old would have worked at a job for a long time. And "person[s] must be over 16 to play the lottery." 2012 WL 686702, at *3.

Thus, observations by a fact-finder are an insufficient basis for establishing age. Additionally, observations along with facts from which the fact-finder can only infer a person's age by personal knowledge are insufficient.

In its brief, the State cites *State v. McConnell*, No. 103,976, 2011 WL 6413620 (Kan. App. 2011) (unpublished opinion). This case is helpful in this court's analysis. In *McConnell*, McConnell contested whether the State established that he was at least 18 years old as required to be convicted of domestic battery against a family or household member. The State relied on the fact that McConnell and his girlfriend had been in a relationship for a year or two, that McConnell and his girlfriend had shared an apartment together, and that McConnell had entered into a bar. This court rejected each of these arguments for the following reasons: (1) "[i]n this day and age, we cannot find that a 16-year-old entering into a [one or two year] relationship to be 'an implausible possibility'"; (2) McConnell's rent obligation was to his girlfriend; and (3) no evidence supported that McConnell consumed alcohol inside the bar. 2011 WL 6413620, at *2.

When we consider the *McConnell* court's holdings in the context of this case, the fact that there is no evidence that Hefele bought the cigarettes is key. In *McConnell*, the court emphasized that there was no evidence that McConnell consumed alcohol in the bar. 2011 WL 6413620, at *2. Accordingly, the *McConnell* court emphasized that no evidence supported that McConnell bought alcohol in the bar. Had McConnell bought alcohol, he would have had to prove his age to legally purchase it. Because he would have had to prove his age, a rational fact-finder could have reasonably concluded that McConnell was at least 21 years old. On the other hand, in *Johnson*, the court emphasized that there was evidence that the victim was over 16 because she "cashed" a

12

lottery ticket. This is because persons must be at least 18 years old to play the lottery. See 2012 WL 686702, at *3. Thus, the victim would have had to prove her age to legally buy the lottery ticket and cash it. As a result, a rational fact-finder could have reasonably concluded that the victim was at least 18 years old because she bought and cashed a lottery ticket.

Here, however, the only information in the record is that Hefele possessed cigarettes. Hefele's possession of cigarettes does not mean that Hefele was over 18 years old. Many teenagers under 18 years old smoke cigarettes; they get cigarettes by many improper ways. Without evidence that Hefele bought the cigarettes, a fact-finder cannot infer that a merchant checked Hefele's identification to determine that he was at least 18 years old.

Next, regarding the townhouse, the State asserts that "[v]ery few individuals under 18 years of age are going to, not only live by themselves, but also live with their girlfriend." The State also suggests that very few 21-year-olds would date someone under 18 years old. But this is pure speculation. Fuchs, who was just 21 years old, would have been in high school at the same time as persons four years younger than her. A person four years younger than Fuchs would be 17 years old. More importantly, nothing about the fact that Hefele shared a townhome with Fuchs definitively speaks to his age. Minors may enter into contracts such as leases. See *State v. Bishop*, 44 Kan. App. 2d 739, 746, 240 P.3d 614 (2010). Thus, even assuming Hefele signed the lease, this fact does not establish that he is at least 18 years old.

As a result, a rational fact-finder could not infer that Hefele was 18 years old based on its observations of him. See *Perez-Rivera*, 41 Kan. App. 2d at 582-83. A rational fact-finder could not infer that Hefele was over 18 years old simply because he possessed a cigarette. Additionally, a rational fact-finder could not infer that Hefele was 18 years old just because he shared a townhome with Fuchs. Because a rational fact-

13

finder could not make an inference about Hefele's age based on these facts, the evidence was insufficient to sustain that Hefele and Fuchs were "family or household members."

In its brief, the State makes the alternative argument that this court should remand to the trial court for Hefele to be resentenced to the lesser included offense of simple battery under K.S.A. 2017 Supp. 21-5413(a)(2). The State's argument hinges on this court's decision in *State v. Harris*, 46 Kan. App. 2d 848, 264 P.3d 1055 (2011). In *Harris*, this court determined that battery under K.S.A. 21-3412(a)(2) (now K.S.A. 2017 Supp. 21-5413[a][2]) is a lesser included offense of domestic battery under K.S.A. 2009 Supp. 21-3412a(a)(2) (now K.S.A. 2017 Supp. 21-5414[a][2]); the only element that simple battery lacks is the "family or household members" element. 46 Kan. App. 2d at 851-52. The *Harris* court also noted that our Supreme Court has held that "'[w]hen a criminal defendant has been convicted of a greater offense, but evidence supports only a lesser included offense, the case must be remanded to resentence the defendant for the lesser included offense.' [Citation omitted.]" 46 Kan. App. 2d at 850. Based on these rulings, and the fact insufficient evidence established that the victim of Harris' battery was at least 18 years old, the *Harris* court remanded Harris' case to the trial court with directions to convict and sentence him for battery. 46 Kan. App. 2d at 852.

This case involves the same factual situation as *Harris*—insufficient evidence supports the age element of Hefele's domestic battery conviction following a bench trial. Moreover, the *Harris* decision provides authority that simple battery is a lesser included offense of domestic battery. We note that Hefele has not filed a reply brief arguing that he should not be resentenced for battery. Consequently, we adopt the State's alternative argument and remand to the trial court with directions to convict and sentence Hefele for battery under K.S.A. 2017 Supp. 21-5413(a)(2).

14

*Criminal Restraint*

Hefele's final argument is that insufficient evidence supported his criminal restraint conviction. Hefele's entire argument hinges on Fuchs' testimony that she never tried to leave the apartment and it was actually Hefele who wanted to leave the apartment. The State's entire argument hinges on Officer Hacker's testimony that Hefele told him that he had prevented Fuchs from leaving for 20 to 30 minutes.

K.S.A. 2017 Supp. 21-5411(a) states that "[c]riminal restraint is knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty."

Although Fuchs testified that Hefele never prevented her from leaving the townhome, Officer Hacker testified that Hefele told him that he blocked Fuchs from leaving the townhome for 20 to 30 minutes. When considered in the light most favorable to the State, blocking somebody from leaving her townhome for 20 to 30 minutes would substantially interfere with that person's liberty. Furthermore, as addressed earlier, Hefele did not have any authority to restrain Fuchs based on the combined self-defense and defense of others statute under K.S.A. 2017 Supp. 21-5222(a). Thus, when viewed in the light most favorable to the State, and without reweighing the evidence, resolving evidentiary conflicts, or making witness credibility determinations, a rational fact-finder could have found Hefele guilty beyond a reasonable doubt of criminal restraint. Therefore, we affirm this conviction for criminal restraint.

Affirmed in part, reversed in part, and remanded with directions.